T. H. SHEPARD v. NORFOLK AND SOUTHERN RAILROAD COMPANY.

(Filed 23 September, 1914.)

1. **Railroads—Crossings—Signals—Stops—Look and Listen—Negligence—Trials—Questions for Jury.**

Whether the failure of a traveler upon the highway in a conveyance to fully stop before entering upon a railroad track at a crossing, in addition to looking and listening, will amount to such contributory negligence as will bar his recovery for injuries consequently received there depends upon the facts and circumstances of each particular case, and is usually a question

for the jury; and the absence of signals, warnings, or other pre-
cautionary measures usually observed by railroad companies at
a given crossing where the injury has occurred is always rele-
vant, and must be given due weight in determining whether the
traveler has exercised the degree of care required of him for his
own safety.

2. Same—Corporation Commission—Orders.

In this action to recover damages for injury to his automobile
caused at night by a collision with the train of defendant rail-
road company at a public crossing, where there were obstruc-
tions caused by buildings coming within a short distance of the
track, and when the plaintiff knew the crossing was dangerous,
there was evidence tending to show that the plaintiff slowed
down the machine and looked and listened before going upon
the track, and the collision was caused without signal, light, or
other warning, by the train coming suddenly backward upon him
and not giving him time to stop his machine; that he was aware
of a ruling of the Corporation Commission requiring the rail-
road company to stop its train before going upon this crossing,
and to send an employee with a light ahead to signal to the
engineer when there was no danger to those desiring to cross
and that he was looking for this man with the light, and, not
seeing him, he did not fully stop his machine, as stated, but fruit-
lessly endeavored to do so when he became aware of his danger.
*Held*, it was for the jury to determine whether the plaintiff was
guilty of contributory negligence in not fully stopping his ma-
chine before attempting to cross the defendant's track.

3. Railroads—Corporation Commission—Orders—Dangerous Cross-
ings—Particular Signals—Negligence.

An order of the Corporation Commission relative to a certain
crossing where the plaintiff in this case was injured required the
railroad company to stop its cars at a certain distance from the
edge of the street, "and said cars and engine shall remain stand-
ing until a man is sent forward to see that no one is approach-
ing, such man at night to carry a lantern as a signal. No cars
or engine shall be moved across the street until signaled to do
so by the man sent out ahead, etc." *Held*, it is the purpose and
intent of the order that the man sent ahead at night with the
lantern shall remain upon the crossing with his lighted lantern
to afford proper warning that the cars are approaching and to
do what is reasonably required to prevent a collision.

APPEAL by plaintiff from *Ferguson, J.,* at March Term, 1914, of CHOWAN.

Civil action to recover damages for injury to plaintiff's automobile.

Plaintiff, a witness in his own behalf, on his examination in chief testified, in substance, as follows: "That on 18 March, 1913, he had attended church in Edenton, and was returning to his home, about 7 miles below and to the east of Edenton, in his automobile, about 10:30 o'clock p. m., with his wife and son and two guests; that this was the only route from Edenton to his home, and was greatly used by the people going from Edenton below town; that the railroad ran practically north and south at the point of the accident and the street and road crossing the same ran east and west; that he knew this was a dangerous crossing, and knew of the order of the Corporation Commission aforesaid with respect to the same. That there were houses on the north side of Church Street extending for about a square to about 26 feet of the railroad track at that point, and which greatly obstructed the view of the railroad track in that direction; that because of these obstructions and of the presence near the said crossing of the peanut company's plant, a five-story building, and other causes, he regarded the crossing as dangerous; that because of this, when he approached the said crossing he slowed the automobile up as slow as he could so as not to stop it, and looked and listened, and there was nothing in the way—no man or anything else; no man standing on the track nor any light, signal, or sign indicating danger; that he saw no train and heard none approaching, and that there was no one upon the track with a lantern or otherwise to notify him of the approaching train; that he did not stop his automobile, but brought it to the lowest speed it could be brought without stopping. It was going at the speed when he approached the track, perhaps about 8 or 10 miles an hour. These houses are built up within 2 or 3 feet of the right of way on the Norfolk and Southern track, certainly 15 or 16 feet from the rail. Until you pass that line of houses it is not possible to see up the track at all; that he knew it to be a very dangerous crossing and of unusual

danger, and that he had crossed it at this point a thousand times or more; that when he entered Church Street and approached the track he looked for the signal required by the order aforesaid."

This witness further testified that just as he approached the track and was about to rise the little slope to it one of the defendant's cars backing in from the north loomed up on the track very close, possibly the length of the car from me. I threw out the clutch and threw on the brakes, but the momentum carried me on. The train was moving fast and struck my car. There was no person or light on the end of the railroad car, which was backing in. He testified that there was no personal damage done any of the occupants of the car, but the car was seriously damaged to the extent of $600 or $700."

And, on cross-examination, speaking to the question chiefly presented on this appeal, he testified as follows: "That he began to look up and down the track as soon as he got to a place where he could see the track, but that he was loooking for a light and not for a train; that having seen no light at the crossing, he did not expect a train."

The testimony on this point was as follows:

Q. Was your automobile making any noise? A. I expect so. None of them are noiseless. It was not making any undue noise; there was nothing the matter with it.

Q. You did not stop your car or listen? A. I didn't stop, but I listened.

Q. Knowing the dangerous character of the crossing, and because of the light streaming from your automobile so you could not see the objects to one side or the other, you still didn't stop the automobile before you undertook to cross? A. No, sir. I didn't bring it to a full stop.

Q. When did you begin to look up and down the track? A. As soon as I could see down the track. I was looking for a light, and not a train.

Q. Seeing no light, you didn't look for a train? A. No, sir; seeing no light, I didn't expect a train.

Q. You neither stopped your car nor listened? A. I did listen.

There was evidence on the part of defendant in contradiction of plaintiff's testimony as to slackening his speed, etc., and further to the effect that before backing on crossing a man had been sent there with a lantern, and, seeing no one approaching, had given the signal for train to cross, etc.

The following order of the Corporation Commission, in force at the time and applicable to this crossing, was shown forth in evidence:

"This matter coming on to be heard, and investigation of same having been had, and the location viewed, it is ordered that from and after 1 August, 1912, the Norfolk Southern Railroad Company shall observe and keep the following regulations in respect to the crossing at east end of Church Street in Edenton, North Carolina, towit: When any of its cars or engines are approaching said crossing, if going forward, it shall stop its engine at all times on arriving at a point 50 feet from the edge of said street, and when going backward it shall stop its cars as soon as the first one reaches a point 50 feet from the edge of the said street, and said cars and *engine shall remain standing* until a man is sent forward to said street ahead of same to see that no one is approaching, *such man at night to carry a lantern as a signal.* No cars or engine shall be moved across said street until signaled so to do by the man sent ahead as above required.

"The foregoing order is entered with the consent of defendant railroad company."

The court being of opinion that, under all the facts and circumstances, it was the duty of plaintiff to have brought his machine to a complete stop before attempting to cross the railroad, charged the jury, among other things, that if they believed the evidence offered by the plaintiff they would answer the issue as to contributory negligence "Yes," and plaintiff excepted.

The jury rendered the following verdict:

"1. Was plaintiff's automobile damaged by the negligence of defendant, as alleged in the complaint? Answer: Yes.

"2. What damage has the plaintiff sustained? Answer: Six hundred dollars ($600).

"3. Did plaintiff by his own negligence contribute to his injury, as alleged in complaint? Answer: Yes."

Judgment on verdict for defendant, and plaintiff excepted and appealed.

*Pruden & Pruden and S. Brown Shepherd for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

HOKE, J., after stating the case: In *Cooper v. R. R.,* 140 N. C., 209, the Court laid down certain rules as to the conduct of travelers approaching a railroad crossing, in terms as follows:

"A traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.

"5. Where the view is unobstructed, a traveler who attempts to cross a railroad track under ordinary and usual conditions without first looking, when by doing so he could note the approach of a train in time to save himself by reasonable effort, is guilty of contributory negligence.

"6. Where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence.

"7. There may be certain qualifying facts and conditions which so complicate the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by a watchman and the traveler enters on the crossing reasonably relying upon the assurance of safety."

These rules and the one last mentioned as being more particularly applicable to the questions presented on this appeal have been frequently upheld and applied in decisions of our Court,

notably in the recent cases of *Johnston v. R. R.,* 163 N. C., 431;
*Fann v. R. R.,* 155 N. C., 136; *Wolfe v. R. R.,* 154 N. C., 569;
*Farris v. R. R.,* 151 N. C., 483.

It is also established by the weight of authority that it is not
always imperative on a traveler to come to a complete stop be-
fore entering on a railroad crossing; but "whether he must stop,
in addition to looking and listening, depends upon the facts and
circumstances of each particular case, and so is usually a ques-
tion for the jury." *Alexander v. R. R.,* 112 N. C., 720; *Judson
v. R. R.,* 158 N. Y., 597; *Malott v. Hawkins,* 159 Ind., pp. 127-
134; 3 Elliott on Railroads (2 Ed.), sec. 1095, Note 147; 33
Cyc., pp. 1010, 1011-1020.

In *Alexander's case* it was held, among other things: "Where,
in an action for damages for an injury received at a railroad
crossing, plaintiff testified that she 'held up very slow' as she
was driving across, and, hearing no bell, which she had heard
the day before while at the crossing, notwithstanding the noise
of the factories on each side of the street, concluded that no en-
gine was approaching, and drove on: *Held,* that it was not
necessary for her to get out of her buggy and go beyond the cars
to look up and down the track, or to stop and listen for an ap-
proaching engine when no signal was given of its approach."

In *Judson's case, supra:* "A person approaching a railroad
crossing is not required, as a matter of law, to stop before at-
tempting to cross, but his omission to do so is a fact for the con-
sideration of the jury."

In *Malott's case,* 159 Ind., *supra,. Gellett, J.,* delivering the
opinion, said: "Exceptional circumstances may also require
him to stop, although this proposition generally presents itself
as a mixed question of law and fact." And in this connection
it is further held that the presence or absence of signal warn-
ings or other precautionary measures usually observed by the
company at a given crossing is always relevant, and must be
given due weight in deciding as to whether the traveler has been
observant of proper care before entering on the crossing and in
failing to come to a complete stop. In 33 Cyc., at page 1028,
the author, speaking to this question, says: "Where a railroad

166—35

company maintains a flagman, gates, or other signals of warning at a railroad crossing, whether voluntarily or by law or custom, the public generally has a right to presume that these safeguards will be reasonably maintained and attended, and in the absence of knowledge to the contrary the fact that the gates are open, or automatic bells not ringing, or that the flagman is absent from his post 'or, if present, is not giving a warning of danger, is an assurance of safety and an implied invitation to cross upon which a traveler familiar with the crossing may rely and act within reasonable limits, on the presumption that it is safe for him to go on the crossing. The extent to which a traveler may rely on such assurance is a question of fact, and while ordinarily the same degree of care and vigilance is not required of a traveler under such circumstances as otherwise, he has no right to rely exclusively upon such circumstances, nor will such presumption or assurance excuse the traveler from using every reasonable precaution that an ordinarily prudent man would use under like circumstances. Such facts as the absence or presence of a flagman, or that the gates are open, or that the automatic bells are ringing or not ringing, are merely facts to be considered in determining whether the traveler exercises the degree of care required in attempting to cross."

Applying these principles, we must hold that on the facts in evidence there was error in the charge of his Honor on the issue as to contributory negligence. From the evidence of plaintiff, and construing the same in the light most favorable to him—the accepted rule when a nonsuit is ordered or the judge practically determines the issue as a question of law—it appears that plaintiff with his wife and son and two guests in his automobile, at 10 :30 p. m., approached the crossing along Church Street; that knowing it was a dangerous crossing, a view of the railroad being obstructed by the positions of buildings along Church Street, he slowed down "to the lowest speed it could be brought without stopping, and listened attentively for the noise of a train; that he was aware of the regulations about this crossing requiring trains to stop 50 feet before entering on same, and, in the nighttime and in case the train was backing, to send a man forward

with a lantern; that he kept a continuous outlook for the signal, and, hearing no train and seeing no man with a light, he did not consider it necessary to come to a complete stop, and in the endeavor to cross the collision occurred. This regulation, by fair interpretation, does not contemplate that in the night-time the man should go forward with a lantern, give a signal, and then retire. The language of the regulation adopted, with the consent of the railroad, is "that said cars and engine shall remain standing until a man is sent forward to said street, ahead of same, to see that no one is approaching; such man, at night, to *carry a lantern as a signal.* No cars or engines shall be moved across said street until signaled to do so by the man sent ahead as above required"; and the meaning and purpose is that the man with the lantern shall remain upon the crossing with his lighted lantern to afford proper warning that cars are approaching and do what is reasonably required to prevent a collision. On careful perusal of the record, we are of opinion that the issue of contributory negligence must be referred to the decision of the jury on the question whether, on the entire facts and circumstances as the jury may find them to be, the plaintiff was in the exercise of reasonable care at the time in entering on the crossing without having come to a full stop. For the error indicated, the verdict will be set aside and there will be a new trial of all the issues.

*Venire do novo.*