BROWN, J., concurring in result; CLARK, C. J., and ALLEN, J., dissenting.
Plaintiff brought this action to recover damages for personal injuries sustained at Selma, N.C. 27 January, 1919, as the result of a collision at a public crossing between the automobile which he was driving and a train on the track of the Atlantic Coast Line Railroad Company, which was being operated by the United States Railway Administration. There was testimony on behalf of plaintiff that the train was running at a speed of thirty or forty miles an hour; that no signal of approach to the crossing was given by whistle or bell; that the view of the track was cut off by a string of cars on a spur track, and that these cars extended two or three feet into the public road. Plaintiff testified that *Page 275 
he looked and could not see down the track in the direction from which the train was coming because his view was obstructed by the cars on the spur track.
There was testimony on behalf of defendant that the cars on the spur track did not obstruct the plaintiff's view of the train; that notice of the approach of the train had been given by blowing the whistle and ringing the bell, and that the speed of the train did not exceed ten or twelve miles an hour.
The defendants pleaded the plaintiff's contributory negligence as a defense, and contended at the trial that the failure of the plaintiff to stop before entering upon the track, when it was his duty to do so, was the proximate cause of his injury.
There was evidence that plaintiff was familiar with the crossing, having passed over it on the morning of the accident on his way from Raleigh to Pine Level. He knew that he was approaching a crossing, and says he slowed down. In describing the condition at the crossing and the circumstances of the accident, he says: "There were eight or ten box cars on the track connecting the Coast Line and Southern Railways; the doors of the box cars were closed, and I could not see through them. The first box car was on the crossing two or three feet. I had to turn my car to get around it. There were some eight or ten cars back on the connecting track that prevented me from seeing the train coming toward the crossing from the South, and I came along up to the crossing and slowed the car down and did not hear anything, and just as I passed the car the engine struck me and carried me down the track. I listened for the train. I could not see the track at any point to the south. I did not hear the whistle blow and there was no sound of bell. I listened and looked all I could. I thought there might be a shifting engine going by. As I came toward the track at Selma that morning I looked for the train and could not see it; the box cars prevented it. I could not see south on account of the box cars. I just looked right in the box cars; that was all there was to look at. That was all that I could see until I got right down on the railroad track; I was looking right at the cars, and I had to come around the edge of the box cars and they projected out two feet in the road; the box cars were within four or five feet of the main line of the Atlantic Coast Line. I knew that trains moved north and south at that point. Through passenger trains passed on that track. I drove around the edge of the box cars. When I got around the end of the box cars my front wheel was on the track the train was on; I did not stop; I just slowed up and listened. I did not get out and go to the edge of the box cars and look. I did not stop to see if anything was coming from behind the box cars. I just slowed up, and when I did not hear anything I just pulled through; when I *Page 276 
decided to pull through I speeded up; I did not stop to look around the edge to see if anything was coming. I did not stop anywhere after I came by the Union Fertilizer Company; I just slowed up and listened just about as slow as a car would go and not stop, and I did not hear anything; when you stop a Ford automobile the engine still runs unless you choke it; I slowed down just enough to keep from choking; they cannot chug away pretty heavy in that condition; my engine was running; I did not cut it off; I did not have plenty of time to cut it off behind those box cars; I listened for the train coming with the Ford engine running under my feet; you could not hear the Ford engine 30 yards away; it was running as smooth as a Cadillac; the Ford had been running a year or two, and had just been overhauled; it was not a second-hand car; I had been running it since August; I have no idea how far I had run the car; I expect I would run about 250 miles per week; I had run this car about 5,000 miles. A man ran it before when he traveled for Swift Company. I should think he made about the same miles as I did. I do not know how long Swift Company had had the Ford; some one said they had it about a year."
D. T. Oliver, witness for plaintiff, testified: "If Mr. Kimbrough had stopped before he got to the crossing, the train would have gone on by and not hit him."
Richard Britt, witness for plaintiff, testified that plaintiff "was going ten miles per hour. He slowed up just before he got to the crossing and speeded up and went on by."
D. T. Oliver, plaintiff's witness, further testified: "Mr. Kimbrough was going about ten miles an hour at the crossing. He was running about as slow as a Ford would go. He kept on running that way until the train hit him. He slowed up from what he was doing possibly. A Ford will not run any less than ten miles an hour."
Defendant contends that this testimony on behalf of plaintiff, construed in the light most favorable to him, establishes the fact that if he had exercised ordinary care under the circumstances he would have stopped before entering upon the track, and the accident would not have occurred.
In addition to the reasons above set forth, the Atlantic Coast Line Railroad Company and its codefendant contended that the motion to nonsuit should have been granted upon the ground that the record fails to show that this company was in any way connected with the control or operation of its line of railroad at the time of the accident.
Defendants contended that the court not only failed to give the jury appropriate instructions as to plaintiff's duty to stop, or take other precaution for his safety, or, in other words, to exercise due care, besides looking and listening, but if the judge did so he gave another instruction *Page 277 
in conflict with it, when he told the jury that if he looked and listened only, they should answer the second issue "No." And that if he had listened, and the company failed to give him proper warning of the approach of the train, it cannot be imputed to him as negligence that he went on the track. Defendants further contended that the instructions on the issue of contributory negligence are erroneous, because they withdraw the question of plaintiff's duty to do more than this, if necessary, from the jury's consideration, and directed the jury to find that plaintiff was not guilty of contributory negligence if he only looked and listened.
The trial judge gave the following instructions on the issue of contributory negligence: "Upon this issue the burden shifts, and it is upon the defendant to satisfy you by the greater weight of the evidence of the truth of their contention, and the defendant alleges that the proximate cause of the plaintiff's injury was his own failure to exercise care and prudence for his own safety; that as he approached this railroad track at the crossing, the track being a warning of danger, it was his duty to look and listen for the approaching of a train, and the defendant alleges that he failed to exercise care and to perform this duty, and that his failure was the real, or proximate cause of the injury. Now, if this evidence satisfies you by its greater weight that as he approached the zone of danger he failed to look and listen, and that if he did look and listen he could either have seen the train or heard the signal, and that under these circumstances he ventured upon the track, then you should answer this fifth issue `Yes,' because he would be guilty of contributory negligence, which would exist and extend up to the time of the injury, and would be the proximate cause of it. Unless you are so satisfied, you will answer this issue `No.' Where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to go on the track, then the failure of the company to warn the traveler of danger cannot be imputed to his contributory negligence. Unless you are satisfied by the greater weight of the evidence, the burden being upon the defendant under this issue, that the plaintiff failed to exercise the care and prudence that the law required of him, as I have indicated to you, then you would answer this issue `No,' or, if the evidence leaves your mind in such condition that you cannot say how it is, then you will answer it `No,' because the burden is upon the defendant to satisfy you affirmatively that the plaintiff was negligent, and that his negligence was the proximate cause of his injury."
Defendants contended that by the instructions of the court, which are set out above, the jury were directed to answer the issue of contributory negligence "No," if they found that the plaintiff, as he approached the crossing, merely looked and listened, and the principle that, under the *Page 278 
exceptional circumstances which the jury were fully justified in finding to exist in this case, it was plaintiff's duty to stop, look, and listen, was entirely ignored. In other words, if the jury should find from the evidence and by its greater weight, the burden being on defendant, that for a distance of several hundred feet the view of defendant's track to the south was cut off by box cars; that the cars extended two or three feet into the public road; that plaintiff being fully aware that he was approaching a crossing, was driving at a speed of ten miles an hour; that the automobile which he was driving could not be driven at less than ten miles an hour; that as he approached the crossing he drove around the cars and immediately after passing the cars his automobile was upon the track on which the train was approaching; that he did not hear the train and could not see whether a train was approaching until he was on the track; that as he listened for a train the engine of his automobile immediately in front of him was running with the noise usually incident to the operation of a gasoline engine, and the jury should find that under such circumstances a prudent man would have stopped his automobile and his engine before driving beyond the box cars and onto the track, then it would be the duty of the jury to answer the issue of contributory negligence "Yes," it having been admitted by plaintiff that he did not stop, and the uncontradicted evidence of plaintiff's witnesses having established the fact that if he had stopped the accident would not have happened.
There was a verdict for the plaintiff, with damages assessed at $20,000. Defendants reserved exceptions, and appealed.
after stating the essential facts of the case: The defendants contend that the instruction covered by their exception No. 28, which was taken to the instruction of the court to the jury, was erroneous, and agreed that it is especially objectionable because by it the jury were told that if the plaintiff looked and listened, and did no more, before entering upon the crossing and the track, they should answer the issue as to contributory negligence "No." We will not discuss the question whether other instructions on this phase of the case were given which were, in themselves, correct, because, even if they were, the other one was erroneous, and in conflict with them. The rule of this Court upon such a question is thoroughly well settled by our decisions. Where such a conflict occurs, a new trial is granted, because the jury are not competent, as we have often said, to decide which instruction is correct, or which is incorrect. We find this rule thus stated in Edwards v. R. R. *Page 279 132 N.C. 99, where the leading authorities are cited: "The fact that the court, in one part of the charge, told the jury that it is the duty of an engineer, when approaching a crossing, to ring the bell or blow the whistle, did not cure the error he committed in the respect already indicated, that he must ring the bell and sound the whistle. It is well settled that when there are conflicting instructions upon a material point a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly and when incorrectly. We must assume, in passing upon the motion for a new trial, that the jury were influenced in coming to a verdict by that portion of the charge which was erroneous." Other cases are, S. v. Barrett, 132 N.C. 1010; Tillett v. R.R., 115 N.C. 662, and Williams v. Haid, 118 N.C. 481.
The court charged the jury that it was sufficient in law if the plaintiff "looked and listened," without doing anything more, and if the jury found that he did, they should answer the second issue, as to contributory negligence, in the negative. This instruction was erroneous, because that it is not all that is required of the plaintiff, but in addition thereto he must further do what a man of ordinary prudence would have done, as, for instance, stopped his car (if the jury would have found that a man of ordinary prudence would have done so), under the same or substantially similar circumstances, to save himself from injury. So that the instruction fell short of the full measure of plaintiff's duty under circumstances which the jury could have found to exist, and this is true, although the jury should find that one of the defendant's engineers, who was at the time in control of the engine, had failed to give the proper signal.
The rule thus stated was the one adopted in Cooper v. R. R.,140 N.C. 209. Even though the plaintiff looked and listened, the jury may have found that the situation was such as to require him to do more, even to stopping his car, as a man of ordinary prudence would have done in like circumstances, or they may have found, by using their common sense and observation, that, notwithstanding what the plaintiff says as to the noise of his car, his ability to hear was so diminished by the noise of the same as to make it imperative that he should stop it, so that he might hear either the noise of the train as it approached nearer and nearer, or the sound of its signal. The jury could have arrived at this conclusion if they accepted the defendant's evidence as true, that the proper signals were given, and there was no reason why the plaintiff should not have heard them and prevented injury to himself, unless his hearing was deadened by his own fault in not stopping his car. And they could also have found that no man of ordinary prudence would venture on the track under the circumstances without assuring himself of the fact that the train, then expected and behind its schedule time, *Page 280 
was not actually coming at that time and near the crossing, or that some shifting engine was about to pass over the crossing, as he testified: "I thought there might be a shifting engine about to pass." Again he stated, "I just slowed up, and when I did not hear anything I just pulled through; when I decided to pull through I speeded up; I did not stop to look around the edge to see if anything was coming. I did not stop anywhere after I came by the Union Fertilizer Company." The jury may have found from this testimony, taken with some other facts, that a man of ordinary prudence would have looked around the edge of the box cars, which were five feet from the track, to see if a switching engine or train was coming, and that it was negligence, tested by the rule of the prudent man, not only not to do this, but to "speed up" when he decided to "pull through." There are, perhaps, other combinations of facts which the jury may have found to exist, and from which the jury, by applying the rule just mentioned, may have inferred that plaintiff's conduct was imprudent, if not very risky, and was not that of the ideally discreet and careful man. The instruction was wrong in itself, inherently so, and if there was a correct one, it was in conflict with it, and left the jury in ignorance of the true principle of law which should govern them in finding a verdict, or, at least, in a state of utter confusion as to what principle applied to facts as they found them to be. If the instructions were not in conflict, but in perfect harmony, as the last one was erroneous, both were wrong, which required the case to be referred to another jury.
In Shepard v. R. R., 166 N.C. 539, it was said by Justice Hoke, citing many cases, and among them Cooper's case, supra: "It is also established by the weight of authority that it is not always imperative on a traveler to come to a complete stop before entering on a railroad crossing; but `whether he must stop, in addition to looking and listening, depends upon the facts and circumstances of each particular case, and so is usually a question for the jury,'" citing Judson v. R. R., 158 N.Y. 597; Malott'scase, 159 Ind., 127-134; 3 Elliott on Railroads (2 ed.), sec. 1095, note 147; 33 Cyc., pp. 1010, 1020. In Judson's case, supra, the rule is stated as follows: "A person approaching a railroad crossing is not required, as a matter of law, to stop before attempting to cross, but his omission to do so is a fact for the consideration of the jury." And in Malott's case,supra: "Exceptional circumstances may also require him to stop, although this proposition generally presents itself as a mixed question of law and fact." And Justice Hoke thus concluded, in Shepard's case: "On a careful perusal of the record we are of opinion that the issue of contributory negligence must be referred to the decision of another jury, when the question whether, on the entire facts and circumstances, as the jury may find them to be, the plaintiff was in *Page 281 
the exercise of reasonable care at the time in entering on the crossingwithout having come to a full stop." (Italics ours.)
And yet the court ignored those principles, and omitted important and essential matter from his instruction on the second issue, and confined plaintiff's contributory negligence to the single fact, whether he "looked and listened," with the instruction that if he did to answer the issue "No." When the court undertakes to define what is negligence, it must do so fully, and not leave out any essential element of it, S. v. Phifer,90 N.C. 721, or to state it differently. When the court attempts to charge the law, it must be done correctly. S. v. Merrick, 171 N.C. 788, and cases cited, especially Carleton's case, 43 Neb. 373, and Simmons v.Davenport, 140 N.C. 407.
As to the motion for a nonsuit we will reserve our opinion, as the facts may more fully and definitely appear on the next trial. Defendants may renew their motion at that time without prejudice.
We are, therefore, of the opinion, and so hold, that there was substantial error as pointed out by us, and a new trial is ordered.
New trial.