J. H. HARRISON AND H. L. LOMAX, ADMINISTRATORS OF CHARLES M. LOMAX, v. THE NORTH CAROLINA RAILROAD COMPANY.

(Filed 7 December, 1927.)

### 1. Evidence—Nonsuit—Statutes.

Where the trial court has erroneously overruled defendant's motion as of nonsuit at the close of the plaintiff's evidence, he waives his right thereto by introducing evidence, and upon his renewal of his motion the entire evidence will be considered. C. S., 561.

### 2. Same—Defendant's Evidence.

Upon a motion as of nonsuit under our statute, C. S., 567, the defendant's evidence will not be considered unless favorable to the plaintiff or not in conflict therewith, when it may be used to explain or make clear the evidence introduced by the plaintiff.

### 3. Railroads—Negligence—Contributory Negligence — Crossings — Automobiles—Rule of the Prudent Man—Evidence—Nonsuit.

Where the entire evidence tends to show, in an action by an administrator against a railroad company to recover damages for the negligent killing of his intestate, that the intestate had stopped at the crossing of a highway with two railroad tracks paralleling each other, for the passage of a freight train before driving his automobile across, and then endeavored to cross and was struck by another train passing on the other and nearer track, the evidence however being conflicting as to whether this train was giving the proper signals of warning required at the place, and that the driver of the automobile could have seen the second train in time to have avoided the injury had he looked or listened and observed before attempting to cross, and was killed by this passing train: *Held*, the defendant's motion as of nonsuit should have been sustained on the issue of contributory negligence; nor is the principle affected by plaintiff's evidence in rebuttal, given by a witness who was not present at the time, and who afterwards went there for observation, that the plaintiff could not have seen or been aware of the approach of the train that killed him, testified upon the hypothesis that under the circumstances the smoke from and the noise of the trains would have prevented his being aware of the facts, against the direct testimony of eyewitnesses who made no mention as to this circumstance.

**4. Same—Look and Listen—Degree of Care Required of Plaintiff.**

The driver of an automobile, under the rule of the prudent man, is required to observe due care before driving across a railroad track, as the apparent circumstances at the time may reasonably require for his own safety, and his failure to do so may render his contributory negligence in that respect the cause without which the injury complained of would not have occurred, and entirely bar his recovery of damages in his action.

**5. Evidence—Conflicting Evidence—Hypothetical Conclusions of Fact— Nonsuit.**

Where the evidence on the trial is insufficient in law to take the case to the jury, except that of one witness, which is contradictory, and in part favorable to each of the parties, the issue on which it is given is ordinarily for the jury to decide, but this result will not follow when his testimony in the plaintiff's behalf is based alone upon his fanciful hypothesis as to a possibly existing fact, of which he is not qualified to testify, and the conflict in his evidence arises merely from his argumentative deductions therefrom.

**6. Negligence—Contributory Negligence—Proximate Cause—Nonsuit.**

Where the negligence of plaintiff's intestate in an action by the administrator to recover damages for his wrongful death, has concurred with that of the defendant in producing the injury that caused it, and was the real, efficient and proximate cause thereof, or the cause without which the injury would not have occurred, it bars his recovery.

APPEAL by defendant from *Lyon, Special Judge,* at April Special Term, 1927, of DAVIDSON.

Civil action to recover damages for an alleged wrongful death caused by a collision between one of defendant's passenger trains and an automobile driven by plaintiff's intestate.

The evidence tends to show that about the hour of noon, 20 May, 1925, plaintiff's intestate, Charles Lomax, ran his Ford coupé, in which he and Miss Pauline Castor were riding, upon the defendant's tracks, at a public crossing in the town of Landis, N. C., in front of an approaching train, operated by defendant's lessee, Southern Railway Company, and was killed, while his companion escaped with serious, but not fatal, injuries. There are two parallel tracks at this crossing. Plaintiff's intestate approached from an easterly direction and stopped his car ten or fifteen feet from the railroad to await the passing of a freight train moving southwardly on the more distant track. As soon as the caboose of the freight train cleared the crossing, plaintiff's intestate started to cross the railroad, when he was struck by a fast passenger train running northwardly at the rate of about sixty miles an hour on the track next to him. This track he had about half cleared, as the train hit the rear of his automobile.

42—194

Plaintiff introduced two eye-witnesses, who testified in substance as follows:

N. C. McGinnis: I saw the collision. J. F. Rumbley and I were traveling in a Ford coupé, with a closed body, and we stopped our car 25 or 30 feet behind the Lomax car. We were all waiting for the freight train, going southwardly, to pass over the crossing. Mr. Lomax stopped his car within 10 or 15 feet of the crossing. The train which struck the Lomax car was a northbound passenger train, and the accident occurred about noon. I did not hear the train give any signal of its approach. I did not hear any whistle or bell. I will not deny that signals were given by the approaching train, but I did not hear them. There was sufficient noise from the passing freight train to have prevented my hearing the signals if given. I did not see the train until just before it struck the Lomax car. It was "pushing right into the crossing" when I first saw it. As the caboose of the freight train cleared the crossing, Mr. Lomax immediately started to cross. The passenger train was coming up on the track next to him. There is a cut at this crossing. The embankment, in my judgment, is 10 or 15 feet from the rail of the eastern or northbound track. In that space, that is 10 or 15 feet before reaching the track, there is nothing in the world to keep a man from seeing the train approaching from the south if he would look before he got on the track. "If Mr. Lomax had looked from where he was sitting in his automobile, I would say, in my judgment, he could have seen the train, which struck him, approaching for a distance of 75 or 100 yards."

J. F. Rumbley: I saw the collision in which Mr. Lomax was killed. Mr. McGinnis and I were in my automobile behind the Lomax car. It is perfectly level at this crossing, but there is a slight decline after you get over the tracks. The tracks are straight for about 100 yards to the south, then they make a little bend. The embankment is 15 or 20 feet away from the first rail of the eastern or northbound track. At this crossing there is a clear space 20 feet between the rails and the edge of the embankment. In that space of 20 feet, there was nothing to prevent Mr. Lomax from seeing the approaching train from where he was standing. "I would say the train could be seen a distance of seventy-five yards from where Mr. Lomax was standing, down the track, if he had looked."

The evidence of the defendant, as given by eye-witnesses, is to the effect that plaintiff's intestate did not look southwardly in the direction of the approaching train before going upon the track, but that he was either talking with the young lady at his right or looking northwardly up the track in the opposite direction; and that the engineer of the passenger train duly sounded his whistle for the crossing at the whistle post.

In rebuttal, plaintiff offered James Castor, father of Miss Pauline Castor, as a witness, who testified in part as follows: I live about nine miles from Landis, and went down to make an inspection of this crossing about three weeks after the accident. Standing ten feet from the railroad I could not see the train coming because of the embankment, which had weeds and briars growing upon it, maybe three or four feet high. I did not look very closely, but you could not see the train ten or fifteen feet from the rail.

"Q. Standing ten feet away from the track, how far could you see to the south? A. You could not see anything of the train.

"Q. Standing five feet away from the track, how far could you see to the south? A. Down this way towards the south you could not see anything.

"Q. Why? A. Trains have so much smoke.

"Q. Were you there to see? A. No, sir, all trains have smoke.

"Q. How far away from the accident were you when it happened? A. Eleven miles.

"Q. You say that if Lomax had been close up to the railroad track he could have seen the train? A. Yes, sir.

"Q. How far could he have seen it? A. Some two or three hundred yards he could have seen it, but being back ten feet he could not.

"Q. But he could have seen it before he got on the track? A. If he had been right up to the track.

"Q. He could have seen it two or three hundred yards? A. Yes, sir."

The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff. From the judgment entered thereon, the defendant appeals, relying chiefly upon its exception directed to the refusal of the court to grant its motion for judgment as in case of nonsuit.

*J. M. Daniel, Jr., Raper & Raper and Phillips & Bower for plaintiffs.*
*Linn & Linn for defendant.*

STACY, C. J., after stating the case: It appears, from the circumstances detailed above, that, at the close of plaintiff's evidence, a clear case of contributory negligence had been made out and that the defendant's motion for judgment as of nonsuit, first interposed at that time, should have been allowed. This was practically conceded on the argument, but plaintiff stressfully contends that the testimony of James Castor, offered in rebuttal, is sufficient to carry the case to the jury, as only the exception noted at the close of all the evidence may now be considered. *Harper v. Supply Co.,* 184 N. C., 204, 114 S. E., 173.

The exception addressed to the refusal of the court to grant the defendant's motion for judgment as of nonsuit, made at the close of plaintiff's evidence, has been waived under the express provisions of the statute. C. S., 567. The defendant had the right to rely upon the weakness of the plaintiff's case, when he rested, but the defendant having elected to offer evidence, did so *cum onere,* and only the exception noted at the close of all the evidence may now be urged or considered. *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356. In considering the last motion, the defendant's evidence, unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with the plaintiff's evidence, it may be used to explain or make clear that which has been offered by the plaintiff. *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769.

Conceding the soundness of the rule just stated, defendant takes the position that the answers appearing in the testimony of James Castor, which seem favorable to the plaintiff's case, are merely argumentative deductions of the witness, based on a fanciful hypothesis, as there was no evidence of any smoke, and that such deductions are without any probative value as evidence and ought not to be permitted to carry the case to the jury. A critical examination of the testimony of this witness leaves us with the impression that the defendant's view of the matter is correct.

True, this witness seemingly testifies both ways, for and against each party, and such equivocation would ordinarily carry the case to the jury. *Shell v. Roseman,* 155 N. C., 90, 71 S. E., 86. But his statements to the effect that plaintiff's intestate could not "see anything of the train," or "towards the south," because of smoke, must be regarded as chimerical or merely conjectural, as it is established by the testimony of eye-witnesses that there was nothing between the eastern track and the embankment—a distance of from 10 to 15 or 20 feet—to keep him from seeing, had he looked. In its present state, the law is not able to protect one who has eyes and will not see—ears and will not hear. *Furst v. Merritt,* 190 N. C., 397, 130 S. E., 40.

The rights of persons and things ought not to rest, and the law will not permit them to depend, upon the uncertain testimony of a witness who is willing to say that a man cannot see when there is nothing to keep him from seeing. If such statements are without foundation in fact, as they are on this record, they must be held to be without probative value as evidence in law. To hold otherwise would be to surrender to the tyranny of a fetishism on wholly unsubstantial grounds.

It was the duty of plaintiff's intestate to look attentively, up and down the track, in time to save himself, if not prevented from doing so by the fault of the defendant or other circumstances clearing him from

blame, and this, under numerous decisions, is required to be done at a time when his precaution may be effective. *Holton v. R. R.,* 188 N. C., 277, 124 S. E., 307; *Cooper v. R. R.,* 140 N. C., 209, 52 S. E., 932.

The evidence of contributory negligence on the part of plaintiff's intestate, coming from plaintiff's own witnesses, with none to exculpate, is certainly as strong, if not stronger, on the present record, than that appearing in the case of *B. & O. R. R. Co. v. Goodman,* 48 S. Ct., 24, decided 31 October, 1927, where *Mr. Justice Holmes,* speaking for a unanimous Court, said: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train and not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. . . . It is true, as said in *Flannelly v. Delaware & Hudson Co.,* 225 U. S., 597, 603, 32 S. Ct., 783, 56 L. Ed., 1221, 44 L. R. A. (N. S.), 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts. See *Southern Pacific Co. v. Berkshire,* 254 U. S., 415, 417, 419, 41 S. Ct., 162, 65 L. Ed., 335."

The standard laid down in this case is but another way of stating the rule of the prudent man, as will be observed from an attentive reading of the language used by the learned Justice who wrote the opinion. He does not say that it is the duty of a driver of a vehicle, on approaching a railroad crossing, to "stop and get out," but such precaution is required only in case he "cannot be sure otherwise whether a train is dangerously near." When a man goes upon a railroad crossing, necessarily a place of danger, he must take such care and precaution for his own safety as a reasonably prudent man would take under the same or similar circumstances.

Tested by this standard, it would seem that the death of plaintiff's intestate was unquestionably due to his own negligence, or that such negligence, concurring and coöperating with the negligence of the defendant, was the real, efficient and proximate cause of the injury, or the cause without which the injury would not have occurred. *Elder v. R. R., ante,* 617.

Nor is this rule essentially different from the one heretofore established by our own decisions. It is universally held that there can be no recovery of damages where the negligence of the traveler contributes

proximately to his own injury, though the railroad company may also be guilty of negligence. Thompson on Negligence, sec. 1605.

Speaking to the question in *Coleman v. R. R.,* 153 N. C., 322, 69 S. E., 251, *Brown, J.,* delivering the opinion of the Court, said: "A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the Court." Proceeding, he quotes with approval the following from Beach on Contributory Negligence (sec. 181): " 'In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track, and a failure to do so is contributory negligence which will bar recovery. A multitude of decisions of all the courts enforce this reasonable rule.' " Continuing, he says: "There are of course exceptions to this, as well as most other rules, but when the traveler 'can see and won't see' he must bear the consequences of his own folly. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take advantage of it."

The same rule was again declared in *Johnson v. R. R.,* 163 N. C., 431, 79 S. E., 690, where *Walker, J.,* speaking for the Court, used the following language: "On reaching a railroad crossing, and before attempting to go upon the track, a traveler must use his sense of sight and of hearing to the best of his ability under the existing and surrounding circumstances—he must look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company, and if he has time to do so; and this should be done before he has taken a position exposing him to peril or has come within the zone of danger, this being required so that his precaution may be effective."

In *Trull v. R. R.,* 151 N. C., 545, 66 S. E., 586, the plaintiff's intestate was standing on a crossing near the main line of defendant's railroad, waiting for a train to clear the track further on his way. While in this position, a shifting engine, engaged in work on the main line, passed down the track, going to a water tank, some distance away. In a short time the engine returned and slowed down at a switch thirty or forty steps from the crossing. The fireman got out, changed the switch, and the engine continued its course on to the crossing, without giving the usual signals. Just at the crossing, and at the precise time of the impact, plaintiff's intestate stepped from a position of apparent safety onto the track, in front of the moving engine, and was killed. The track here was straight; there was nothing to obstruct the view, and, so

far as the evidence disclosed, there was nothing to explain or qualify the intestate's obligation to look and listen and be otherwise properly attentive to his own safety. Upon this showing, the Court held, as a matter of law, that plaintiff's intestate was guilty of negligence, concurrent with that of defendant's employees, and sustained a judgment of nonsuit.

The evidence offered by the plaintiff, it seems to us, clearly shows that plaintiff's intestate failed to take proper care and precaution for his own safety, hence it must be declared that, under established rules of law, judgment of nonsuit should have been entered on all the evidence.

Reversed.