CLARKSON, J., dissenting.
Civil action to recover for personal injuries and property damage alleged to have been caused by the negligence of the defendant, Southern Railway Company.
The record discloses that on the morning of 20 March, 1940, the plaintiff's automobile collided with defendant's passenger train at "West End *Page 563 
Crossing," a paved, double-tracked, grade crossing in the town of Thomasville, and inflicted serious personal injuries on the plaintiff and demolished his automobile.
The plaintiff had driven from his home, a distance of about eleven miles, and was on his way to the plant of the Columbia Panel Company, where he worked. It was a little after 7:00 a.m. He says: "I had been using this crossing once or twice a day, five to six days a week for about six months, and was familiar with it."
As the plaintiff approached the crossing he observed that it was blocked by a freight train on the second or northbound track — the one farthest from him. He stopped about eight or ten feet from the first rail of the southbound track — the one nearest to him — and to the right and abreast of another car which had also stopped at the crossing. The automatic signals were not functioning that morning. Plaintiff stood there three or four minutes. Presently, the crew of the freight train cut it in two and pulled the front part up, clearing the crossing. A car and a truck came across from the opposite side. Plaintiff says, "as soon as the truck cleared the crossing and ceased to obstruct my view towards the depot, I looked to my left in the direction of the depot and listened, and I looked to my right and listened before starting. My engine stopped while I was parked at the intersection. I started my engine at the time the truck came over the tracks and came on by me. I put my car in low gear and did not change it. I did not see the moving passenger train which struck me. The front end of my car was across the first rail of the first track when it hit me. The front wheels were about half way between the first rail and the second rail. . . . At the time I was parked at the intersection and up to the time of the collision, I did not hear any train whistle or bell. I did not see or hear any moving passenger train."
Plaintiff's witness, E. E. Perdue, testified that "When the freight train on the second track was cut in two and pulled up, a car crossed. from the south side, that is the opposite side from where I was sitting, and then a big truck came through. That is when I saw the train approaching on the first or southbound track. I saw the freight train on the northbound track cut in two. I do not know what became of the man who cut it in two. I did not see anyone left on foot at the crossing when the train was cut in two. . . . I saw the passenger train coming south on the first track. He looked to me like he was going to hit the truck. The truck cleared the track and I heard the crash between the plaintiff, Miller's automobile, and the train. This was a passenger train going south. . . . In my opinion this train was running at a speed of 45 to 50 miles an hour. . . . (Cross-examination): It is something like a half mile or more from the freight depot *Page 564 
in Thomasville down to the West End Crossing. The railway tracks from the depot to the crossing are absolutely straight. West Main Street parallels the railway tracks all the way from the railroad depot to West End Crossing. Both the tracks and the street run in an easterly to westerly direction and they run along for a half mile side by side. . . . I stood there in my car some five minutes. Shortly after I had stopped Mr. Miller, the plaintiff, also pulled up to the intersection and stopped. . . . If the whistle blew I did not hear it. . . . I don't think those lights were flashing at the time. . . . When the freight train opened up on the second track a truck came through from the south side or opposite side of the crossing and came on across. I saw the truck. Mr. Miller, the plaintiff, had to see it if he was looking. I looked up and looked toward the freight depot and saw the passenger train coming. I thought it was going to hit the truck. It was the same train that hit Mr. Miller. Q. And the view of that train all the way back to the station was a half mile or more? A. Yes, half a mile. I cut my eyes back on the track and Miller had pulled up on the track. It happened so quick I could not tell whether Miller hit the cylinder of the engine or the engine hit him. Anyway, I did not get hit. I sat there and let the train go by."
These central facts were amplified by other witnesses and additional testimony, but the foregoing will suffice for the disposition which we think must be made of the case.
The defendant moved for judgment of nonsuit at the close of plaintiff's evidence, which was overruled. Exception. The defendant offered no evidence.
The usual issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff. From judgment thereon, the defendant appeals, assigning as error the refusal of the court to sustain its motion for judgment of nonsuit.
Conceding negligence on the part of the defendant in the operation of its train, as the jury has found, the question occurs whether plaintiff's contributory negligence is such as to bar a recovery. We had occasion to review the pertinent authorities in the recent case of Godwin v. R. R.,ante, 281. From what is said there, it would seem that an affirmative answer should be given here.
It is established by all the evidence that the plaintiff started his car and drove a distance of eight or ten feet onto the crossing in front of an *Page 565 
oncoming train, which he should have seen in the exercise of reasonable care. This was negligence on his part which contributed to the injury. Tartv. R. R., 202 N.C. 52, 161 S.E. 720.
The plaintiff does not say that he could not see the train — for Perdue who was similarly situated saw it — he only says that he did not see it and that he heard no signal of its approach. Nor does the plaintiff say there was anything to keep him from seeing the train or that there was anything to obstruct his view from where he was sitting in his car. His testimony is, that he looked in the direction the train was coming and listened and did not see or hear it. He assigns no reason for not seeing it, and the record affords none, other than his own want of due care.
The evidence in respect of the signs and poles on the right of way is not material to the inquiry. They did not obstruct the plaintiff's vision from where his car was stopped while he was waiting at the crossing. Nor does the failure of the automatic signals to function save the case from nonsuit. The plaintiff knew the signals were not working and was therefore put on guard that he could not rely upon them. And he did not rely upon them. He says that he looked in both directions and listened before starting upon the crossing. Hence, according to his own testimony, he failed to see the obvious. It was said in Powers v. Sternberg, 213 N.C. 41,195 S.E. 88, that where every appearance indicated the plaintiff was running into a zone of danger which he should have seen, and which others similarly situated did see, if he did not, the plaintiff is barred from recovery.
The cases of Oldham v. R. R., 210 N.C. 642, 188 S.E. 106; Finch v.R. R., 195 N.C. 190, 141 S.E. 550; and Shepard v. R. R., 166 N.C. 539,82 S.E. 872, cited and relied upon by the plaintiff, are distinguishable by reason of different fact situations. In the Finch case,supra, which arose out of an injury at this same crossing, the traveler was waiting on the opposite side of the crossing, and the parted freight train there, which was on the track nearest him, obscured his vision so that he could not see the approaching passenger train, which was on the second track from him. Moreover, in the Finch case, supra, there was evidence that one of the crew of the freight train signaled the motorist to cross. Here, the facts are quite different. Likewise, in both the Oldham and Shepardcases, supra, there were extenuating circumstances which prevented the plaintiffs from seeing the approaching trains.
The result here is controlled by the line of decisions of which Harrisonv. R. R., 194 N.C. 656, 140 S.E. 598; Eller v. R. R., 200 N.C. 527,157 S.E. 800; and Godwin v. R. R., supra, may be cited as illustrative. We are content to rest our conclusion on what is said in these cases.
The demurrer to the evidence was well interposed.
Reversed. *Page 566