CECIL D. JERNIGAN, JR. v. ATLANTIC COAST LINE RAILROAD
COMPANY

No. 686SC239

(Filed 15 January 1969)

**1. Trial § 21— nonsuit — consideration of evidence**

In considering a motion for nonsuit, all the evidence favorable to
plaintiff must be taken as true and interpreted in the light most favor-
able to him.

**2. Negligence § 35— nonsuit for contributory negligence**

Judgment of nonsuit is proper when plaintiff's evidence, taken in the
light most favorable to him, shows contributory negligence on his part so
clearly that no other conclusion can be reasonably drawn therefrom, and
that this negligence was a proximate cause of the injury for which plain-
tiff seeks to recover.

**3. Railroads § 5— crossing accident — negligence of railroad — con-
tributory negligence of motorist**

In an action to recover for injuries received when plaintiff motorist
collided in the nighttime with a train engine standing on a railroad cross-
ing, plaintiff's evidence tending to show that defendant's engine was un-
lighted, that no audible warning of the train's presence was given, that
plaintiff was familiar with the custom of the railroad to place a flag-
man at this crossing to warn of the presence of a train on the crossing,
but that there was no flagman at the crossing when the accident occur-
red, that plaintiff's view of the railroad tracks was unobstructed for a
distance of 72 feet, that plaintiff first saw the engine when he was ten
feet from it but was unable to stop in time to avoid striking it, that
signs warned approaching motorists of the railroad crossing, and that
plaintiff was familiar with the crossing through past experiences, while
sufficient to raise inferences of negligence on the part of defendant rail-
road, *is held* to establish contributory negligence by plaintiff in failing to
look and listen to determine the presence of the train at a crossing with
which plaintiff was thoroughly familiar.

**4. Railroads § 5— railroad crossing**

A railroad crossing is itself notice of danger.

**5. Railroads § 5— knowledge of crossing — duty of motorist**

When a motorist has knowledge that a railroad crossing lies ahead,
he must exercise due care and diligence to protect himself.

**6. Railroads § 6— public crossing — duty of motorist to exercise due
care**

Failure of trainmen to give timely warning of the approach of a train
to a public crossing does not relieve a traveler on the highway of his
duty to exercise due care for his own safety.

**7. Railroads § 6— public crossing — custom of having flagman at
crossing**

A motorist familiar with the custom of the railroad to have a flagman

at a grade crossing to warn of approaching trains has the right to place some reliance on the custom, but is not entitled to rely entirely thereon and omit the exercise of all care for his own safety.

**8. Railroads § 5— knowledge of crossing — duty of motorist**

A motorist is required to look and listen to ascertain whether a train is sitting in his lane of travel when he has knowledge of the existence of a railroad crossing.

**9. Railroads § 5— illusion of an open crossing — duty of motorist**

In an action for injuries received by a motorist who collided in the nighttime with a train engine standing on a crossing, conceding defendant's engine blocked only a portion of the crossing so that the view of lights on the opposite side of the crossing gave plaintiff the illusion of an open crossing, plaintiff was not thus relieved of the duty to exercise due care at the crossing.

APPEAL by plaintiff from *Copeland, J.,* at the February 1968 Civil Session, Superior Court of HALIFAX.

Plaintiff instituted this action on 7 October 1964 seeking damages for injuries received when his car collided with a train in Weldon, North Carolina. The accident in question occurred on West Third Street which ran generally east and west. The street had two lanes, one for eastbound traffic and one for westbound traffic.

There are three railroad tracks crossing West Third Street in the town of Weldon. These railroad tracks run generally in a north-south direction. When one is traveling east on West Third Street, there is a decline which begins approximately 100 yards west of the railroad crossing. The decline is steep so that one traveling in an easterly direction cannot see the railroad track until he crosses the crest of the hill and starts downward. After crossing the railroad tracks, going in an easterly direction, there is an incline. There is an overhead railroad trestle located 72 feet west of where the three railroad tracks cross West Third Street. This overhead trestle is supported by an abutment which is 14 to 15 feet wide, is approximately 18 inches thick, and is 16 feet tall. The street is clear between this overhead trestle and the point where the railroad tracks cross West Third Street.

The plaintiff alleged that the railroad company was negligent in allowing an unlighted or improperly lighted engine partially to block his lane of travel; that the defendant, for many years, had provided a flagman at this crossing, but failed to do so when this accident occurred; and, that the railroad company did not keep a proper lookout for the plaintiff and did not warn him of the presence of the engine by ringing the bell or blowing the whistle.

The defendant answered, denying negligence, and pleaded contributory negligence of the plaintiff as a proximate cause of his injury and as a bar to recovery.

At the close of the plaintiff's evidence, on motion of the defendant, the court entered judgment of involuntary nonsuit. The plaintiff appeals.

*Allsbrook, Benton, Knott, Allsbrook & Cranford by Richard B. Allsbrook for plaintiff appellant.*

*Spruill, Trotter & Lane by Charles T. Lane for defendant appellee.*

MORRIS, J.

[1]    In considering a motion for judgment of nonsuit made by a defendant, all of the evidence favorable to the plaintiff must be taken as true and interpreted in the light most favorable to him. *Champion v. Waller*, 268 N.C. 426, 150 S.E. 2d 783; *Lienthall v. Glass*, 2 N.C. App. 65, 162 S.E. 2d 596.

[3]    The evidence presented at the trial below would permit the jury to find the following to be the facts in this case:

On the night of 6 October 1961, the plaintiff and one other person had been working on a cottage located on the Roanoke River near Weldon, North Carolina. At approximately 1:00 a.m. on 7 October 1961, the plaintiff left the cottage to take his helper to his car. They traveled west on West Third Street. When they came to the railroad crossing previously described, a flagman stopped them. The train, at this time was "just sitting" on the track. Plaintiff and his helper waited approximately five minutes before the engine moved and the flagman waved them on. The plaintiff traveled approximately two miles on West Third Street (the same as Highway 158) toward Roanoke Rapids. After putting his helper out, he drove east on Highway 158, or West Third Street, back toward Weldon and the railroad crossing. He was traveling at approximately 35 miles per hour when he crossed the hill crest located approximately 100 yards west of the railroad crossing and started down the decline. He began reducing his speed. He could not see the railroad tracks before he crossed this hill crest. He slowed down further as he was under the overhead trestle located approximately 72 feet west of the railroad tracks. At this point the plaintiff, looking east, could see both sides of the street beyond the railroad tracks. He could see a stop light located on Washington Avenue, lights under a service

station located just east of the railroad tracks, and street lights located on West Third Street, east of the railroad crossing; however, none of these lights threw any light on the railroad tracks. As the plaintiff moved under the overhead trestle and toward the railroad tracks, he was traveling approximately 15 miles per hour. When he was approximately 10 feet from the third set of railroad tracks he first saw the train engine. It was projecting approximately five feet into his lane of travel and was not in motion. Plaintiff applied his brakes, but did not stop in time; his automobile struck the engine, and, as a result, the plaintiff was seriously injured. At the time of the accident, plaintiff's eyes were in excellent condition and the headlights on his car were in good working order. His headlights did not pick up the train until he was at the bottom of the hill and started across the railroad tracks; at this point the engine was directly in front of him. The plaintiff did not see any lights on the engine, nor did he hear a whistle or other warning before the collision. Also, the defendant did not have a flagman at the crossing.

Other evidence, offered by the plaintiff, tended to show that it was the practice of the railroad to have a flagman at the crossing whenever the train was there.

The engine was black with reflectorized strips running the full length of the engine. The plaintiff had lived in Weldon for approximately 10 years, was aware of the railroad crossing, and was aware that it was the practice of the railroad to use a flagman at this crossing. There is a round yellow sign, indicating a railroad crossing, approximately 500 feet west of where the accident occurred. There is another cross arm sign, indicating a railroad crossing ahead, just west of the overhead trestle.

[2, 3]    While the evidence presented by the plaintiff raises sufficient inferences of negligence on the part of the defendant railroad for submission of the question to the jury, it has long been the rule in this State that judgment of nonsuit is proper when the plaintiff's evidence, taken in the light most favorable to him, shows negligence on his part, and that this negligence was a proximate cause, or one of the proximate causes, of the injury for which the plaintiff seeks to recover. The plaintiff's evidence must show contributory negligence on his part so clearly that no other conclusion can be reasonably drawn therefrom. *Price v. Railroad,* 274 N.C. 32, 161 S.E. 2d 90; *Ramey v. R. R.,* 262 N.C. 230, 136 S.E. 2d 638; *Herndon v. R. R.,* 234 N.C. 9, 65 S.E. 2d 320; *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137.

"The rule is firmly embedded in our adjective law to enter a

judgment of nonsuit on the theory of contributory negligence when plaintiff's own evidence, considered in the light most favorable to him, shows negligence on his part proximately contributing to his injury, so clearly that no other conclusion can be reasonably drawn therefrom. . . . The plaintiff thus proves himself out of court. . . . The very term 'contributory negligence' implies that it need not be the sole cause of the injury." *Ramey v. R. R., supra.*

[3]    The evidence in this case, when taken in the light most favorable to the plaintiff, shows that the plaintiff could see the railroad tracks when he crossed the crest of the hill. His view of the tracks was completely unobstructed after he went under the overhead trestle, a distance of 72 feet from where the accident occurred. There were signs which gave warning that there was a railroad crossing ahead, and further, the plaintiff was familiar with this crossing through past experiences.

[4-6]    A railroad crossing is itself notice of danger. When a person has knowledge that a railroad crossing lies ahead he must exercise due care and diligence to protect himself. *Bennett v. R. R.,* 233 N.C. 212, 63 S.E. 2d 181; *Price v. Railroad, supra.*

". . . a traveler has the right to expect timely warning, . . . but the failure to give such warning would not justify the traveler in relying upon such failure or in assuming that no train was approaching. It is still his duty to keep a proper lookout. . . . 'A traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.'" *Godwin v. R. R., supra.*

[7, 8]    Speaking on the right of a person to rely on the custom of the railroad to use a flagman at a crossing, our Supreme Court in *Ramey v. R. R., supra,* said:

"Plaintiff had the right to place some reliance on the custom or usage of the defendant when one of its trains was approaching this grade crossing, where a bank to his right partially obscured his view of its tracks, to have a flagman there and its whistle blowing and bell ringing, and to stop the train at the grade crossing until the flagman waved it to proceed, with which custom and usage he was familiar. *Johnson v. R. R., supra* (255 N.C. 386, 121 S.E. 2d 580); *Oldham v. R. R.,* 210 N.C. 642, 188 S.E. 106; *Southern Ry. Co. v. Whetzel,* 159 Va.

796, 167 S.E. 427; 75 C.J.S., Railroads, § 939; 44 Am. Jur.; Railroads, §§ 561 and 562. However, this rule does not mean that plaintiff could rely entirely on a proper performance on the part of defendant of its custom and usage there, and omit the exercise of all ordinary care on his part for his own safety, because it was his legal duty to take such precautions for his own safety as an ordinarily prudent man would take under the same or similar circumstances. *Johnson v. R. R., supra; Parker v. R. R.,* 232 N.C. 472, 61 S.E. 2d 370; *McCrimmon v. Powell,* 221 N.C. 216, 19 S.E. 2d 880; *Miller v. R. R.,* 220 N.C. 562, 18 S.E. 2d 232; *Godwin v. R. R., supra;* 75 C.J.S., Railroads, §§ 939 and 763; 44 Am. Jur., Railroads, § 480, p. 719."

In *Irby v. R. R.,* 246 N.C. 384, 98 S.E. 2d 349, our Supreme Court said:

"In the instant case plaintiff knew that he was approaching a railroad, and he knew he was entering a zone of danger. He was required before entering upon the track to look and listen to ascertain whether a train was approaching." (Quoted in *Price v. Railroad, supra.*)

We think that a party is also required to look and listen to ascertain whether a train is sitting in his lane of travel when he has knowledge of the existence of a railroad crossing. Or, as stated by Pless, J., in *Cecil v. R. R.,* 269 N.C. 541, 153 S.E. 2d 102, "With that knowledge, he must remember that it is always train time at a railroad crossing — and the train has the right of way. Motorists must recognize that the tracks constitute a deadly warning that a train may be coming and that they must protect themselves by diligently using their senses for self-preservation."

[9]     Plaintiff argues that since the engine was only partially blocking his lane of traffic and he was able to see up West Third Street past the railroad crossing, this created an "illusion of an open crossing". Conceding only for the sake of argument that this is true, the creation of an "illusion of an open crossing" would tend to establish negligence on the part of the defendant railroad; however, it does not relieve the plaintiff of the obligation to exercise due care at a railroad crossing. In *Young v. R. R.,* 266 N.C. 458, 146 S.E. 2d 441, our Supreme Court, although deciding the case under Ohio Law, held, with approval, that the issue of negligence on the part of the defendant railroad should be submitted to the jury where it was shown that the defendant had created an "illusion of an open crossing". It is important to note that the plaintiff in the *Young* case was a passenger and not the driver. The Court was not deciding the

question of the driver's negligence. The Court, however, does state that if the driver were found to be negligent, his negligence would not be imputed to the plaintiff-passenger.

As stated in *Parker v. R. R.*, 232 N.C. 472, 61 S.E. 2d 370:

"It does not suffice to say that plaintiff stopped, looked, and listened. His looking and listening must be timely, *McCrimmon v. Powell, supra,* so that his precaution will be effective. *Godwin v. R. R., supra.* It was his duty to 'look attentively, up and down the track,' in time to save himself, if opportunity to do so was available to him. *Harrison v. R. R., supra* (194 N.C. 656, 140 S.E. 598); *Godwin v. R. R., supra. Here the conditions were such that by diligent use of his senses he could have avoided the collision. His failure to do so bars his right to recover. Godwin v. R. R., supra.*" (Emphasis added.)

**[3]**    Plaintiff's own evidence, considered in the light most favorable to him, shows a failure by him to exercise that degree of care which the law requires when one is aware that he is approaching a railroad crossing. No other conclusion can be reasonably drawn therefrom.

The decision below is

Affirmed.

MALLARD, C.J., and CAMPBELL, J., concur.