RIDDLE v. SOUTHERN RY. CO. et al.

No. 4566.

Circuit Court of Appeals, Fourth Circuit.

Aug. 30, 1940.

Edwin S. Hartshorn, of Asheville, N. C. (Francis J. Heazel, George. A. Shuford, Heazel, Shuford & Hartshorn, and William A. Sullivan, all of Asheville, N. C., on the brief), for appellant.

G. Lyle Jones, of Asheville, N. C. (W. T. Joyner, of Raleigh, N. C., and George H. Ward, G. L. Jones, Jr., and Jones, Ward & Jones, all of Asheville, N. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This was a civil action instituted by the plaintiff, as administratrix of her deceased husband, Clyde Riddle (hereinafter called Riddle), against the Southern Railway Company and certain other defendants, to recover damages for the alleged wrongful death of Riddle, the plaintiff's intestate. The action, originally instituted in a state court of North Carolina, was duly removed by the defendants to the United States District Court for the Western District of North Carolina.

During the trial, the form of the issues to be submitted to the jury was agreed upon, and was approved by the court. The second of these issues was: "Did the plaintiff's intestate, Clyde Riddle, by his own negligence, contribute to his injury and death, as alleged in the answer?"

At the close of all the evidence, Judge Webb directed the jury to answer this second question in the affirmative. The jury, in obedience to the peremptory instruction, answered the second issue "Yes". Judgment was thereupon entered against the plaintiff and in favor of the defendants. Plaintiff-appellant, after due objections and exceptions to the rulings and judgment of the District Court, appealed to this court.

For the purpose of this appeal, plaintiff-appellant raises four separate questions. These four questions, however, are closely interrelated, and we are called on to decide only one question: was Judge Webb correct in deciding that the plaintiff's intestate was guilty of contributory negligence, as a matter of law? We believe Judge Webb's ruling was correct.

This statement of the salient facts in the case is taken from the brief of appellant (pp. 3 and 4):

"Plaintiff's intestate, Clyde Riddle, 27 years of age, was driving an automobile truck in connection with a highway construction job near Enka, Buncombe County, North Carolina, on December 17, 1936. The highway under construction, (U. S. No. 23), is parallel to and North of the main track of the Murphy Division of the defendant, Southern Railway Company, and both run approximately East and West. Just South of the main track and parallel to it is a side track. The North rail of the side track is 8.3 feet south of the South rail of the main track. A 'Loading Road' is about 4 feet South of the South rail of the side track. Another road crosses the side track and main track and extends North to U. S. No. 23.

"Two box cars were parked on the side track just West of this cross-road. These two box cars extended about 85 feet along the side track. The Northern side of the box cars was 5.8 feet South of the Southern rail of the main track. Box cars are from 9-1/4 to 10-1/4 feet wide and 13.6 feet high.

"Riddle had loaded his truck with cement from the Western-most box car, backed to the cross-road and was proceeding North on the cross-road. When the cab of his truck cleared the Northern edge of the box cars, he looked both ways, saw that a passenger train travelling East was about to strike his truck (the front end of which was already on the main track), and threw up his hands, and the

train struck his truck, knocking it some 40 feet down the track, and fatally injuring Riddle. The rear end of the train was some 300 feet past the crossing when the train stopped. * * * There was considerable noise caused by the trucks in the neighborhood of the crossing.

"The track was straight for perhaps half a mile or more West of the crossing, and is on top of the ground for about 677 to 777 feet to the West of the crossing. West of that it is in a cut for some distance. There are bushes and trees South of the track, about 477 feet West of the crossing.

"The highway construction work, unloading of materials from cars on this siding, and hauling same across the tracks to the highway under construction, with trucks crossing the tracks almost continuously during daytime when work was in progress, had been going on for several weeks before the collision.

"The train was operated by the defendant Southern Railway Company, and the individual defendants were the train crew, (engineer, fireman, conductor). The engineer operates the locomotive seated on the right side thereof."

■ For the purposes of this opinion, it may be conceded that there was negligence on the part of the defendant. The facts of the case, however, show very clearly that no recovery in favor of the plaintiff could possibly be predicated here upon the doctrine of last clear chance.

Plaintiff-appellant relies very heavily upon the opinion of Mr. Justice Cardozo in the well-known case of Pokora v. Wabash Railway Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049. We have no quarrel with the opinion in that case, in which it was held that the plaintiff was not guilty of contributory negligence as a matter of law. We think, though, that the facts in the instant case can very clearly be distinguished from those in the Pokora case.

In the Pokora case, Pokora was driving his truck across a railway grade crossing in the populous city of Springfield, Illinois. There were a large number of railroad tracks, also switches, along the street on which the accident happened. Before entering the street intersection, Pokora had stopped his truck and, before proceeding, he looked for trains, but a string of box cars cut off his view. He listened but heard nothing, neither bell nor whistle. Still listening, he drove across the switch, and was struck by a train coming at an unlawful speed.

■ In the instant case, there was no evidence whatever to show that Riddle gave even one thought to, or took a single precaution for, his own safety. Apparently, he was quite willing to take a terrible chance. Tragically, it broke against him. After his truck (then facing west) was loaded, he backed first east on the loading-road and then south on the cross-road. The evidence seems to indicate that Riddle then stopped his truck on the cross-road about 30 feet south of the track on which the accident happened. It is a fair inference from the evidence, too, that at this spot there was an appreciable space to the West of the box cars (the direction from which the train was approaching) where the view is unobstructed. He did not then look for a possible approaching train and it is important that, in the statement of facts quoted above from the appellant's own brief, no mention is made of Riddle's either looking or listening until the front end of his truck was already on the main track of the Southern, when, according to this same statement, (appellant's brief, p. 4) he "threw up his hands and the train struck his truck".

The evidence showed clearly that many other persons in the neighborhood of the accident both saw and heard the approaching train. Some of these made rather frantic efforts by shouting and waving at Riddle to prevent him from driving his truck in front of the train; but, so the evidence shows, Riddle did not either hear the shouting or see the waving, so he drove his truck on the track, right in the path of the oncoming train. It is not without importance that Riddle (a truck driver in the employ of the road contractor, Strider & Company) was thoroughly familiar with the conditions existing around the place of the accident and the evidence goes even further to show that he must have known the schedule of passenger trains on this Murphy division of the Southern Railway.

■ We agree with the Pokora case that the law does not, under all circumstances, impose the duty upon a truck driver, upon crossing a railway track with his truck, to get down off his truck, go to

262

the front of the truck and look and listen for trains which might possibly be approaching. It should be noted, however, that Pokora did stop his truck once, did look and listen, and that he was still listening while he was driving his truck across the railroad tracks.

The road in which Riddle was driving his truck when the accident happened was not a city street, as in the Pokora case; nor was it even an important road. It was an unimportant country road which came to a dead-end at a very short distance south of the track on which the train in question was running.

In the Pokora case, Justice Cardozo learnedly discussed at some length the varying rules laid down by different courts as to the duty of one crossing a railway track, to stop, look and listen. Then he said (292 U.S. 104, 54 S.Ct. 582, 78 L.Ed. 1149, 91 A.L.R. 1049): "Choice between these diversities of doctrine is unnecessary for the decision of the case at hand." The quoted sentence, we believe, is peculiarly applicable to the Riddle case. We believe, though, that our decision here is quite consistent with the Pokora case; is in line with the decisions on this subject by the highest court of North Carolina, Harrison v. North Carolina Railroad, 194 N.C. 656, 140 S.E. 598; and also squares with the decisions of our own court on this point, McNabb v. Virginian Ry., 55 F.2d 137, Calloway v. Pennsylvania Ry. Co. 62 F.2d 27.

We are not unmindful of the fact that the plaintiff's intestate is guilty of contributory negligence as a matter of law, if, and only if, that is the only reasonable and legitimate inference which can be drawn from the evidence, when that evidence is taken in the light most favorable to the plaintiff's intestate. Any fairminded person, we believe, upon an impartial consideration of the uncontradicted testimony here, must reach but one conclusion. To the question contained in the second issue: "Did plaintiff's intestate, Clyde Riddle, by his own negligence, contribute to his injury and death, as alleged in the answer?" there can be, in our opinion, but one reasonable answer—in the affirmative.

For the reasons stated above, we affirm the judgment of the District Court.

Affirmed.