BESSIE MILLER, ADMINISTRATRIX OF LEMUEL SCOTT, DECEASED, v. SOUTHERN RAILWAY COMPANY AND B. C. PATTON.

(Filed 28 June, 1933.)

**Railroads D b—Last clear chance is inapplicable in absence of evidence that injury could have been avoided after reasonable discovery of peril.**

> Peril and the discovery of such peril in time to avoid the injury is the basis of the doctrine of the last clear chance, and the burden upon the issue is on plaintiff and the issue should not be submitted unless there is evidence to support it, and where, in an action to recover for intestate's death resulting from a collision between his car and defendant's train at a grade crossing, the evidence viewed favorably to plaintiff fails to show that the engineer could have stopped the train and avoided the injury after he saw or could have seen, in the exercise of due care, intestate's car on the tracks, the submission of the issue of the last clear chance is error.

CLARKSON, J., dissenting.

CIVIL ACTION, before *Stack, J.*, at September Term, 1932, of FORSYTH.

The evidence tended to show that Lemuel Scott, plaintiff's intestate, was killed at the Muddy Creek grade crossing in Forsyth County on or about 12 January, 1931, by a train of the defendant, Southern Railway Company, operated at the time by the defendant, B. C. Patton, the locomotive engineer. The physical facts and situation were described by Mr. Hill, a civil engineer, who testified for the plaintiff. He said: "The

highest point of this embankment, back some four or five hundred feet from the crossing toward Winston-Salem, is twelve feet above the railroad. . . . There is no shrubbery along the top of that embankment between this highway and the railroad. . . . The embankment of the railroad runs out level with the crossing practically at the crossing, and there is a gradually increasing embankment from there up the line towards Winston-Salem. At a distance of two hundred feet from the crossing, the embankment is about eight feet above the railroad tracks; at a distance of 150 feet from the crossing it is about seven feet above the railroad track; at a distance of 100 feet from the crossing it is five feet above the railroad track; four hundred feet from the crossing it is about twelve feet above the railroad track, which is about the maximum height of the embankment. The concrete highway is an ascending grade going toward Winston-Salem, and is higher than the railroad track. The sand-clay road as it leaves the hard surface and approaches the railroad is practically level with the railroad tracks, perhaps a little higher. . . . Standing on the railroad track at the crossing, on the side nearest the concrete highway, you can see four or five hundred feet up the railroad track toward Winston. The sand-clay road after it leaves the hard-surface road is approximately fifty or sixty feet from the railroad track. I observed the train coming around that cut while I was making this survey there. I was standing in the sand-clay road about twenty feet from the crossing, toward the hard-surface road, and I could see the top of the train all the way through the cut but couldn't get a full view of the train until it got within about 150 feet of the crossing. . . . I would say that the average engine running over that road is about fifteen feet high; that is, to the top of the cab." Another witness for plaintiff said: "I was standing in the road approximately twenty feet from the track on the west side of the track. I could see the smokestack of the engine as it came up over the grade approximately 400 feet away from the crossing. I could not see the front end of the engine from where I was standing more than about 300 feet up the track." The evidence tended to show that the deceased was driving a T Model Ford, and, while there was no eye witness to the accident, it appears from the evidence that after the collision the car was turned over on the left side of the railroad track and the body of the deceased was on the front of the engine. Another witness for plaintiff said that "the road between the tracks at the time of the accident was in fairly good condition, kinder rough like." Another said: "The road from the main highway across the railroad was rough, it had been sand-clayed and was very rough, broken up. The road over the crossing was very rough." Another witness said: "The crossing was muddy and rutty, pretty deep cuts."

The collision happened in the day time and there was evidence that "It was raining, heavy clouds, foggy, misting rain." A witness for plaintiff said: "It was cloudy and misting rain, kinder of a sleet. There was right much fog. The fog kinder settled over the highway. I was bothered some little going on about the fog." The plaintiff contended that Patton, the engineer, was practically blind as a result of cataracts upon his eyes. It appeared, however, without contradiction, that the cataract had been removed from Patton's eye on 15 April, 1929, and that in January, 1930, the engineer had normal vision with glasses in his right eye and considerable vision in his left eye. Patton was dead at the time of the trial.

Issues of negligence, contributory negligence, last clear chance and damages were submitted to the jury and answered in favor of plaintiff. Damages were awarded in the sum of $5,000 for the negligent killing and $45.00 injury to property. The jury answered the issue of last clear chance in the affirmative. The defendant excepted to submitting the issue of last clear chance.

From judgment upon the verdict in favor of the plaintiff the defendant appealed.

*Forrest G. Miles and John C. Wallace for plaintiff.*
*John C. Wallace and Manly, Hendren & Womble for defendant.*

BROGDEN, J. There was sufficient evidence of negligence and of contributory negligence, and as the jury answered both of these issues in the affirmative, the determinative question is whether the trial judge should have submitted to the jury the issue of last clear chance.

Peril and the discovery of such peril in time to avoid injury constitutes the back-log of the doctrine of last clear chance. Was the plaintiff's intestate in a situation of peril at the crossing? Did his car stall on the track? Did he look and listen before attempting to cross? The evidence does not speak upon any of these questions. Manifestly he was in a position of peril when his car was driven upon the track in the ordinary act of crossing, because the train was at hand. Consequently the inquiry must shift to the engineer of the train. How far was the train from the crossing when plaintiff's intestate entered upon the track? Could the engineer in the exercise of ordinary care have stopped the train and prevented the collision after he discovered or should have discovered that the intestate was attempting to cross the track or in a position of peril or so obviously insensible of impending danger as to put the engineer on guard? The evidence does not speak clearly on any of these questions, although there are certain uncontradicted excerpts of testimony which shed light upon the situation. The fireman declared that

the engineer "could have seen the car when he saw the car was going to come on across anyway he threw his brakes in emergency." The fireman further said: "At the time he applied his brakes in emergency he was fifty to one hundred feet from the crossing." The trainmaster said: "From my experience, under the conditions existing at this crossing on the morning of the accident, if the train approached this crossing at a speed of thirty miles an hour, if the brakes were applied in emergency, everything working one hundred per cent, the train could not have been stopped in my opinion, in less than seven hundred and fifty to a thousand feet, which would be from three to four train lengths. That train was approximately 250 feet long. The lighter the train, the less momentum, and the quicker you can stop the train; you could stop a train quicker with three cars and a locomotive than you could with ten cars, because the weight and momentum is less." The foregoing excerpts from the testimony were uncontradicted and constitute the sole evidence upon the points indicated.

The burden of the issue of last clear chance is upon the plaintiff, and such issue is not applicable unless there is evidence to support it. *Redmon v. R. R.,* 195 N. C., 764, 143 S. E., 829. A liberal interpretation of the testimony fails to disclose any evidence that the engineer could have stopped the train or prevented injury after he should have discovered, in the exercise of ordinary care, that plaintiff's intestate was in a position of peril. Therefore, the issue of last clear chance should not have been submitted to the jury. See Duke Bar Association Journal, May, 1933, p. 84.

Error.

CLARKSON, J., dissenting.