65 S.E.2d 379 (1951)
233 N.C. 661
MOUNT OLIVE MFG. CO., Inc.
v.
ATLANTIC COAST LINE R. CO.
No. 238.
Supreme Court of North Carolina.
June 7, 1951.
*385 Langston, Allen & Taylor, and W. R. Allen, all of Goldsboro, for plaintiff appellee.
Bland & Bland, Goldsboro, W. B. R. Guion, New Bern, for defendant appellant.
WINBORNE, Justice.
Did the trial court commit error (1) in overruling defendant's objection to the submission of the third issue, that is, as to last clear chance; (2) in overruling defendant's motions, aptly made, for judgment as of nonsuit; and (3) in declaring and explaining the law arising on the evidence with respect to the first and third issues? These are the questions involved as stated by defendant in its brief filed on this appeal.
Considering the second question first: The evidence shown in the record on appeal, taken in the light most favorable to plaintiff, as is done in testing its sufficiency on motions for judgment as of nonsuit, appears to be sufficient to take the case to the jury on the first issue.
Moreover, in the light of the extenuating circumstances under which the agent of plaintiff drove plaintiff's automobile on the track in the face of an oncoming railroad train, as revealed by the evidence shown in the record, the question as to contributory negligence of plaintiff was properly submitted to the jury. Cooper v. North Carolina R. Co., 140 N.C. 209, 52 S.E. 932, 3 L.R.A., N.S., 391; Shepard v. Norfolk & S. R. Co., 166 N.C. 539, 82 S.E. 872; Oldham v. Seaboard Air Line Co., 210 N.C. 642, 188 S.E. 106.
However, as to the first question: We are of opinion and hold that the doctrine of last clear chance is inapplicable upon the facts of record, and that the issue in that respect should not have been submitted to the jury.
It is stated by this Court in Redmon v. Southern R. Co., 195 N.C. 764, 143 S.E. 829, Brogden, J., writing, that the doctrine of last clear chance does not arise until it appears that the injured party has been guilty of contributory negligence; that no issue with respect thereto must be submitted to the jury unless there is evidence to support it; and that the burden of such issue, when submitted, is upon the plaintiff.
Moreover, in Miller v. Southern R. Co., 205 N.C. 17, 169 S.E. 811, 812, opinion also *386 by Brogden, J., this Court declared that "Peril and the discovery of such peril in time to avoid injury constitutes the backlog of the doctrine of last clear chance".
And in Ingram v. Smoky Mountain Stages, Inc., 225 N.C. 444, 35 S.E.2d 337, 339, in opinion by Barnhill, J., it is said: "The practical import of the doctrine is that a negligent defendant is held liable to a negligent plaintiff if the defendant, being aware of plaintiff's peril, or in the exercise of due care should have been aware of it in time to avoid injury, had in fact a later opportunity than the plaintiff to avoid the accident. * * *
"Its application is invoked only in the event it is made to appear that there was an appreciable interval of time between plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence. * * *
"It is what defendant negligently did or failed to do after plaintiff put himself in peril that constitutes the breach of duty for which defendant is held liable.
"To sustain the plea it must be made to appear that (1) plaintiff by his own negligence placed himself in a dangerous situation; (2) the defendant saw, or by the exercise of reasonable care should have discovered, the perilous position of plaintiff, (3) in time to avoid injuring him; and (4) notwithstanding such notice of imminent peril negligently failed or refused to use every reasonable means at his command to avoid the impending injury, (5) as a result of which plaintiff was in fact injured", citing cases. To like effect is Aydlett v. Keim, 232 N.C. 367, 61 S.E.2d 109, opinion by Denny, J.
The discovery of the danger, or duty to discover it, as basis for a charge of negligence on the part of defendant after the peril arose, involves something more than a mere discovery of, or duty to discover, the presence of the injured person, it includes a duty, in the exercise of ordinary care under the circumstances, to appreciate the danger in time to take the steps necessary to avert the accident. It has been said by the Supreme Court of the State of Washington, in Hartley v. Lasater, 96 Wash. 407, 165 P. 106, 108, that "Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation. * * *
"A mere statement of the rule reveals its inapplicability to a case where the contributory negligence began and culminated without the lapse of appreciable time". See also Shanley v. Hadfield, 124 Wash. 192, 213 P. 932; Annotation 92 A.L.R. 47.
There must be legal evidence of every material fact necessary to support the verdict, and such verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities". 23 C.J. 51; 32 C.J.S., Evidence, § 1042. Mercer v. Powell, 218 N.C. 642, 12 S.E.2d 227, and other cases, including Poovey v. International Sugar Feed Number Two Co., 191 N.C. 722, 133 S.E. 12, 14.
In the Poovey case, supra, it is said: "`The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the court will not leave the issue to be passed on by the jury'. (Citing cases.) This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation."
Tested by these principles, there is no substantial evidence that, after S. B. Taylor drove plaintiff's automobile into a place of danger, there was anything defendant could have done to avert the collision between the automobile and defendant's engine.
Indeed, the colloquy between the court and the conductor, as to the distance within which an engine and train of cars traveling at speed of six miles per hour could *387 be stopped, lacks probative value. In the first place it does not stand the test of mathematical calculation, even "for just a second or two". In the second place, evidence reveals estimates of the speed of the engine varying from four to eight miles per hour.
Where issue of last clear chance is erroneously submitted, and the jury answers both issues, negligence and contributory negligence in affirmative, and issue as to last clear chance in affirmative, defendant is entitled to judgment. Reep v. Southern R. Co., 210 N.C. 285, 186 S.E. 318. So it is in the present case,the defendant is entitled to judgment.
So holding, it becomes unnecessary to consider the third question. Hence the judgment below is reversed.
Johnson, Justice dissenting.
This record leads me to the view that the issue of last clear chance was properly submitted to the jury.
It seems to me there was enough evidence on the plaintiff's side to sustain the jury-finding that the engineer, in the exercise of reasonable care, should have stopped the locomotive before striking the plaintiff's automobile. True, the engineer's testimony tends to show he did not have sufficient time to avert the collision. He said: "The front pilot (the cow-catcher of the locomotive) got within 5 or 6 feet of the car before he moved. * * * At that point, just as the automobile started to move, I applied the brakes and emergency, but I was so close to him the engine couldn't possibly stop in that distance. * * From the point I first saw him move and applied the brakes and emergency, it actually took 15 or 16 feet to stop the engine. Yes, sir, I applied the brakes when the car was turned toward the track."
However, there is substantial evidence tending to support the contrary view, i.e., that enough time elapsed after the engineer discovered, or in the exercise of due care should have discovered, the perilous position of plaintiff's agent, S. B. Taylor, to have enabled the engineer, in the exercise of reasonable care, to stop the locomotive and avert the collision: The engineer testified that after backing northwardly into Bell siding beyond the Byrd spur switch, where he picked up a car at a warehouse, he then proceeded back southwardly toward the spur track switch and the plaintiff's office. He said: "I could see Mr. Taylor's automobile all the way from the point where we started back southwardly on Bell siding." And the plaintiff's witness Taylor, who moved the automobile, said he traveled "about 12 or 15 feet" before he was hit. This contradicts the engineer's statement that the front of the locomotive was only 5 or 6 feet from the automobile before it moved. Moreover, the evidence as to distances on the ground tends to corroborate the plaintiff's evidence that the automobile traveled from 12 to 15 feet, rather than only 5 or 6 feet. The engineer's statement that he saw the automobile only during the interval it traveled the last 5 or 6 feet, when considered with the rest of his testimony and with the plaintiff's evidence, lends support to the plaintiff's contention that the engineer did not exercise due care to avoid the collision. This is further accentuated by the plaintiff's evidence tending to show that the automobile was pushed 40 feet down the track and that the locomotive brakes were not applied until after the collision. Witness Taylor testified, in part, that the locomotive brakes were not applied until after he was hit: * * * "I heard the brakes when they caught against the wheels and the squealing. You could even see the fire coming from it. I know it and I saw it. My car had been pushed at least 30 feet when I heard that noise. * * * It carried my car southwardly along Bell siding 40 feet before coming to a stop. * * I don't think it was going over four or five miles an hour the last time I saw it. I didn't pay any attention to it after I got in the car because I thought he was slowing up to go in Byrd's spur." The engineer said the speed of the engine was 5 to 8 miles per hour. The fireman said from 5 to 7 miles.
The following testimony of the conductor also tends to show that the engineer, in the exercise of reasonable care, might have *388 stopped the locomotive during the interval the automobile was traveling the distance of "from 12 to 15 feet":
"Q. Don't you know that a locomotive going six miles an hour can be stopped almost instantly? A. The conditions have a lot to do with that if the wheels pick up and slide.
"Q. I am talking about a fair day (and all the evidence shows the weather was fair) as you had with a locomotive of the type you had, going six miles an hour, if it can't be stopped almost instantly? A. It don't take a great sight of space to stop one.
"Q. It should stop in 6 to 8 feet? A. If the conditions are favorable.
"Q. You said you had good brakes? A. I don't know anything about that.
"Q. It should be stopped in 6 or 8 feet? A. I think a train moving at that speed, if conditions are good it ought to stop, yes.
"Q. 6 or 8 feet? (no answer)."
Add to this the evidence tending to show that the automobile was parked where it customarily stayed; that it was being moved by witness Taylor at the request of the conductor, so as to free this seldomly used spur track for a shifting operation thereon; that the automobile was being moved across both the spur and the siding tracks, the only way it could be moved, and like it had been moved many times before under similiar conditions when the locomotive was to go in the spur track. The automobile was moved according to the established, customary pattern. But contrary to the customary pattern, the locomotive this time did not go in on the spur track,and that's the heart of this case. It passed the switch and struck the automobile on the other track,on the Bell siding track. Why the trainmen did not follow the usual pattern, Mr. Taylor, in driving the automobile out of the way, knew not. Before he got in the automobile he saw the conductor going toward the switch, as if to throw it and turn the locomotive in on the spur, as was usually done. Why the switch was not thrown this time does not appear. The conductor said he was standing there at the switch. All of this was calculated to lull Mr. Taylor into a sense of safety. It should have spurred the engineer's call to diligence.
This evidence, it would seem, was enough to sustain the jury in finding, as they did, that the engineer, in the exercise of due care, should have averted the collision. I am constrained to so vote.