**Edith Portis BAUGHN, Administratrix of the Estate of William Edwin Baughn, Deceased, Plaintiff,**

v.

**SEABOARD AIR LINE RAILROAD COMPANY, Defendant.**

No. C–152–WS–66.

United States District Court
M. D. North Carolina,
Rockingham Division.

Oct. 19, 1968.

Clyde C. Randolph, Jr., Winston-Salem, N.C., Thomas & Harrington, Monroe, N.C., for plaintiff.

Henry & Henry, Lumberton, N.C., for defendant.

## MEMORANDUM OPINION

HAYES, District Judge.

The plaintiff's intestate was killed on a clear dry day at 3:45 P.M. June 1, 1966, when an East bound freight train running on the main line struck the rear end of intestate's truck and killed him instantly. The Court grants the motion of defendant for a directed verdict in its favor because it affirmatively appears from the plaintiff's evidence that the intestate drove into the path of an oncoming train in an effort to beat the train, or if he didn't know the train was approaching it was because he failed to look and listen when he had an opportunity to know of the train's approach in time to avoid the accident.

Baughn, the intestate, had weighed his truck load of sand, 28,200 pounds at the scale house which is 20.3 feet lower than the elevation at the crossing. The maximum speed the truck could make to the crossing was 10 to 12 miles per hour and could be stopped in half its length, or 12 feet. If the truck came to a complete stop in the vicinity of the telephone booth, it would have to start in second low gear and 5 miles per hour would be its maximum speed at the crossing.

There was nothing between the scale house and crossing to obstruct a motorist's view of a train approaching from the West except some empty hopper cars. In the light most favorable to the plaintiff, Spencer said the cars were on the secondary track and the nearest one to the crossing was 80 feet and Dean said the nearest one was 100 feet from the crossing. Although these men were from one-fourth to three-fourths mile south of the crossing and at that distance it would be difficult to know which of three tracks the cars were on, and would raise serious doubts of the substantive or probative value of their opinions, Harrison v. North Carolina R. Co., 194 N.C. 656, 140 S.E. 598, yet assuming that it places the cars on the secondary track, it is physically impossible for these cars to obstruct the view of an approaching train from the West at any time between the phone booth and the main track.

The accuracy of the Liles topographical map is stipulated. It shows the crossing is 20.3 feet higher than the scale house and a train from the West would be observable all the way to the crossing unless cars partially blocked the view.

The telephone booth on the West side of the 24′ asphalt highway is 31′ from the second track and 48′ from the main line. The main line and secondary track are parallel and straight for more than three-fourths of a mile with 16 to 17 feet of space between the two tracks. Therefore it would be physically impossible for a car standing on the secondary track 80 feet West of the crossing to obstruct the view of a train approaching the crossing from the West on the main line if the motorist is in the area between the telephone booth and the main line. The motorist could see and hear the approaching train if he looked and listened and could have stopped in 12

feet. His seat was 5 feet behind the front of the truck and after passing the second track he could have stopped before entering the main line.

The law of North Carolina is well settled that a nonsuit should be entered if plaintiff's negligence was one of the proximate causes of the injury. If the motorist, in the exercise of ordinary care, could have seen or heard the train, the failure to do so is contributory negligence as a matter of law; or if the motorist, with knowledge of an approaching train, tries to beat it over the crossing, is guilty of contributory negligence constituting one of the proximate causes of the accident. Carter v. Atlantic Coast Line R. Co., 256 N.C. 545, 124 S.E.2d 561. In this case Justice Higgins said: "He failed to use his faculties but trusted to luck which, as sometimes happens, turned out to be bad." That case quoted with approval this statement: "In the instant case plaintiff knew that he was approaching a railroad, and he knew he was entering a zone of danger. He was required before entering upon the track to look and listen and to ascertain whether a train was approaching." Irby v. Southern R. Co., 246 N.C. 384, 98 S.E.2d 349, 70 A.L.R.2d 1.

The looking and listening must be timely so that his precaution will be effective. Parker v. Atlantic Coast Line R. Co., 232 N.C. 472, 61 S.E.2d 370.

The testimony of the engineer is explanatory of the circumstances at the crossing. When his engine was 400 to 500 feet from the crossing he saw the truck approaching at a slow speed and saw the driver with his face toward the engineer. The engineer was sure the truck was going to stop and when he didn't, he applied the emergency brakes but the collision incapacitated his brakes. The engine hit the rear end of the truck. The engineer radioed the switch train for assistance. It was only one mile away and came down on the secondary track to the scene of the accident and on to the disabled engine on the freight train.

The flagman on the switch train said he always rode with it and that it placed the hopper cars on the run around the track at a spot he had marked to cut them off from the train far enough to avoid them endangering crewmen using the secondary track. That point was 527' West of the crossing according to the map. There the brakeman applied the brakes to the cars so the employees of Hedrick could let them down by gravity to the wash pit, thence to the loading pit, thence to the scale house, thence East on the scale track. Cars could not be moved by gravity from secondary track to the run around track. There is no plausible reason or explanation of why ten to fifteen empty cars would have been left on the secondary track. The significance of this testimony increases the distance where the motorist had a clear view of the train at least one-fourth mile.

Many North Carolina cases could be cited in which, under the facts of this case, contributory negligence is established as a matter of law, suffice it to cite the recent case of Price v. Seaboard Air Line R. Co., 274 N.C. 32, 161 S.E.2d 590, in which C. J. Parker collects and analyzes railroad crossing cases and cites with approval Ramey v. Southern R. Co., 262 N.C. 230, 136 S.E.2d 638; Medlin v. Seaboard Air Line R. Co., 261 N.C. 484, 135 S.E.2d 52; Jenkins v. Atlantic Coast Line R. Co., 258 N.C. 58, 127 S.E.2d 778; Carter v. Atlantic Coast Line R. Co., 256 N.C. 545, 124 S. E.2d 561; Irby v. Southern R. Co., 246 N.C. 384, 98 S.E.2d 349, 70 A.L.R.2d 1; Herndon v. North Carolina R. Co., 234 N.C. 9, 65 S.E.2d 320; Bennett v. Southern R. Co., 233 N.C. 212, 63 S.E.2d 181; Bailey v. North Carolina R. Co., 223 N.C. 244, 25 S.E.2d 833; Godwin v. Atlantic Coast Line R. Co., 220 N.C. 281, 17 S.E.2d 137; Harrison v. North Carolina R. Co., 194 N.C. 656, 140 S.E. 598, and Coleman v. Atlantic Coast Line R. Co., 153 N.C. 322, 69 S.E. 251.

428

On the basis of this settled North Carolina law and the facts established in this case the Court holds that plaintiff's intestate was guilty of contributory negligence proximately causing the accident and grants the motion for a directed verdict in favor of the defendant.