GLOSSON MOTOR LINES, INC. v. SOUTHERN RAILWAY COMPANY
No. 6922SC249

(Filed 23 July 1969)

**1. Negligence § 12—   last clear chance doctrine**
    The doctrine of last clear chance is applicable when both plaintiff and defendant have been negligent and defendant has time to avoid the in-

jury after the combined negligence of both has resulted in the hazard being created.

**2. Railroads § 5— crossing accident — last clear chance — sufficiency of evidence**

In plaintiff's action for damages arising out of the collision between plaintiff's tractor-trailer and a freight train owned by defendant railroad, issue of last clear chance was properly submitted to the jury where plaintiff's evidence tended to show that, after the plaintiff's driver had negligently pulled onto the railroad tracks behind traffic facing a stop sign, there was an appreciable time before the collision during which defendant's engineer could have discovered the driver's peril and acted to slow down or stop the train, but that the engineer did not apply the brakes until after the collision occurred, and that the driver of the automobile in front of plaintiff's driver pulled away from the stop sign a second or two before the collision occurred.

APPEAL by defendant from *Thornburg, S.J.,* 2 December 1968 Special Civil Session of Superior Court of DAVIDSON County.

This is a civil action instituted by the plaintiff to recover for damages sustained as a result of the collision of a tractor-trailer owned by the plaintiff and a freight train owned by the defendant. The collision occurred on 21 June 1967 at what is called "Connell's Crossing" in Thomasville. This crossing is where the railroad crosses Trinity Street (it was also called Connell Street by some of the witnesses).

The evidence for the plaintiff tended to show that its tractor-trailer (truck) on 21 June 1967 was being driven by Gary Berrier who was employed as a "local driver." Berrier was accompanied by Larry Potts, a summer employee of the plaintiff. The truck was on its "regular run" from Lexington to Thomasville and return. At Connell's Crossing, Trinity Street runs generally east and west, and the three separate tracks of the defendant run generally north and south. After turning into Trinity Street behind a lady driving a Ford automobile (Ford), the truck was traveling in a generally western direction. The Ford stopped at the tracks and then proceeded across the tracks and stopped at the stop sign on Trinity Street at the point where it intersects Main Street, which at that point runs parallel with the railroad tracks. This intersection is estimated to be from 10 to 40 feet west of the westernmost rail of the defendant's tracks. Berrier drove the truck up to the tracks and stopped. After looking both north and south, he determined that the tracks were clear and he proceeded across and stopped behind the Ford. At the intersection Berrier could see for about a mile to the south and about 1500 to 2000 feet to the north. The restricted

vision to the north was caused by a curve in the defendant's tracks. Berrier stopped about two feet behind the Ford which left the rear portion of the trailer across defendant's southbound track. There was traffic behind the truck but none of it was on the tracks. After the truck had been in this position from 20 seconds to two or three minutes, the defendant's freight train came around the curve to the north. It was traveling in a southern direction at a speed estimated from 35 to 65 miles per hour and did not slow down until it struck the truck. Berrier and Potts first saw the train when it was approximately 1400 feet away, and the engineer began to blow the whistle when the train was 1000 to 1400 feet away. Berrier blew his horn and yelled at the woman in the Ford. She did not move and Berrier then moved his truck within one foot of the rear of the Ford and locked the brakes, but the rear of the trailer was still across the southbound track. There was no traffic in the eastbound lane of Trinity Street between the railroad crossing and Main Street. The engineer did not slow the train or apply brakes from the time it rounded the curve until after the collision and thereafter it continued on down the tracks for approximately 2100 feet. The Ford pulled out into Main Street a split second before the collision.

The evidence for the defendant tended to show that the 120-car freight train was being operated in a southerly direction on the southbound track at a speed of 55 miles per hour prior to entering the city limits of Thomasville. At the second crossing north of where the accident occurred the engine was "placed in dynamic braking" which had the effect of decreasing the speed of the train. Defendant's engineer testified that "(d)ynamic braking is where you do not use the air brakes." When the train came around the curve 1200 feet to the north of Connell's Crossing, it was traveling at 35 to 40 miles per hour and was further slowing down as a result of the "dynamic braking." At the time the engineer first observed the truck of the defendant its front wheels were on the northbound track and the remaining portion of the truck was on Trinity Street to the east of the crossing. Upon coming around the curve the engineer began blowing the whistle in short blasts. The truck pulled across the tracks and stopped with the rear portion of the trailer on the southbound tracks. It then appeared to pull up and stop again, and in all, it pulled up and stopped a total of three times. At the time the truck pulled across the tracks, the train was approximately 800 feet away. The engineer continued to sound the whistle in short blasts. When the train was 100 feet from the crossing, the engineer applied emergency brakes but the train could not stop and struck the trailer at a point near the rear wheels of the trailer unit. The defendant

also offered evidence which tended to show that the Ford automobile had pulled out into Main Street prior to the collision and that the Ford was approximately 257 feet away at the time of the collision. It was also shown that Trinity Street flares out at the intersection of Main Street and there was a grassy area along side Trinity Street. The parties stipulated as follows:

> "IT IS HEREBY STIPULATED AND AGREED between the parties that in the event the jury should answer the issues of negligence in favor of the plaintiff, that the plaintiff shall recover from the defendant without the necessity of showing damage to its tractor-trailer unit or furniture the sum of $2,-800.00. It is further stipulated and agreed that in the event the jury should answer the issues of negligence in favor of the defendant, the defendant, Southern Railway Company, shall recover from the plaintiff for damage to its engine and automatic signaling device without the necessity of introducing evidence as to such damage or as to the amount thereof the sum of $2,-800.00."

The following three issues were submitted to the jury and each was answered in the affirmative:

> "1. Was the plaintiff's property damaged as a result of the defendant's negligence?
>
> 2. Did the plaintiff by its own negligence contribute to its own damage and the damage to the property of the defendant?
>
> 3. Notwithstanding plaintiff's contributory negligence, if any, could defendant, through the exercise of due care, have avoided damage to the plaintiff?"

From the entry of judgment awarding plaintiff $2,800.00, the defendant appeals to the Court of Appeals, assigning error.

*Robert L. Grubb for plaintiff appellee.*

*Joyner, Moore & Howison by W. T. Joyner, and Walser, Brinkley, Walser & McGirt by Gaither S. Walser for defendant appellant.*

MALLARD, C.J.

[1]   Defendant objected to the submission of the third issue relating to last clear chance. The doctrine of last clear chance is applicable when both the plaintiff and the defendant have been negligent and the defendant has time to avoid the injury after the combined

negligence of both has resulted in the hazard being created. In the case of *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 35 S.E. 2d 337 (1945) it is said:

> "The doctrine of last clear chance, otherwise known as the doctrine of discovered peril, is accepted law in this State. It is this: The contributory negligence of the plaintiff does not preclude a recovery where it is made to appear that the defendant, by exercising reasonable care and prudence, might have avoided the injurious consequences to the plaintiff, notwithstanding plaintiff's negligence; that is, that by the exercise of reasonable care defendant might have discovered the perilous position of the party injured or killed and have avoided the injury, but failed to do so. * * *
>
> To sustain the plea it must be made to appear that (1) plaintiff by his own negligence placed himself in a dangerous situation; (2) the defendant saw, or by the exercise of reasonable care should have discovered, the perilous position of plaintiff, (3) in time to avoid injuring him; and (4) notwithstanding such notice of imminent peril negligently failed or refused to use every reasonable means at his command to avoid the impending injury, (5) as a result of which plaintiff was in fact injured."

In the case of *Irby v. R. R.*, 246 N.C. 384, 98 S.E. 2d 349 (1957), the Supreme Court said:

> "The discovery of the danger, or duty to discover it, as basis for a charge of negligence on the part of defendant after the peril arose, involves something more than a mere discovery of, or duty to discover, the presence of the injured person, it includes a duty, in the exercise of ordinary care under the circumstances, to appreciate the danger in time to take the steps necessary to avert the accident."

[2] Applying the above principles of law to the evidence in this case, we are of the opinion and so hold that the court did not commit error in submitting the issue of last clear chance. There was evidence of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff. There was also evidence that the defendant's engineer could have but failed to slow down or stop the train after he saw or should have seen that the plaintiff's truck was in a position from which it could not in the exercise of reasonable care be moved or extricated because of the Ford in front of it stopped at the stop sign at the entrance to Main Street.

The evidence in this case most favorable to plaintiff tended to show that if the truck driver had had just a few more seconds after the driver in front of him moved that he could have moved his vehicle off the tracks. The evidence most favorable to plaintiff tended to show that the brakes on the train were not applied and the train did not slow down until after the collision. The jury could have found from the evidence, as it did, that there was an appreciable time between the negligence of the plaintiff's driver in pulling plaintiff's truck onto the railroad track behind traffic facing the stop sign and the time it was struck, during which the defendant's engineer in the exercise of ordinary care, could or should have seen it, discovered its peril, acted with due care by slowing down or stopping and thus avoided the effect of plaintiff's negligence. There is no evidence that plaintiff was in a position to move the truck out of the way of the train after his negligent act of pulling up behind the Ford and stopping. We think that whether the engineer, in the exercise of due care, saw or should have seen the Ford stopped by the traffic on Main Street, and the truck stopped immediately behind the Ford in time to appreciate the danger the truck was in and to take the necessary steps to slow down or stop the train and thus had the last clear chance to avoid the collision was a proper question for the jury.

Defendant contends that the trial court committed error in charging the jury on the doctrine of last clear chance and on the first issue involving the negligence of the defendant. These contentions are without merit. We think the charge, when read as a whole, is basically correct and free from prejudicial error.

No error.

Britt and Parker, JJ., concur.